CHARLESTOWN.

WILLIAMS *et al. v.* COUNTY COURT OF GRANT CO. *et al.*

Submitted September 3, 1885.—Decided September 19, 1885.

1. A bill of injunction in equity will not lie to restrain the collection of a tax laid by a county court for county-purposes, on the sole ground that the assessment of the tax is illegal. There must exist in addition circumstances bringing the case as presented by the bill under some recognized head of equity such as the preventing of a multiplicity of suits. (p. 493.)

2. But if one or more tax-payers of the county on behalf of himself or themselves and all other tax-payers of the county subject to the illegal tax complained of file their bill of injunction to prevent the collection of such tax, it will lie, on the ground that such injunction will avoid a multiplicity of suits. (p. 518.)

3. But there must be an averment in such bill, that it is filed by the plaintiff or plaintiffs on behalf of himself or themselves and of all other tax-payers subject to the illegal tax. Such an averment is absolutely essential to give a court of equity jurisdiction on the ground of avoiding a multiplicity of suits. (p. 524.)

4. If such averment is not made, the bill is fatally defective on demurrer, when the avoiding of a multiplicity of suits is the only ground for equitable interference on the face of the bill; but if such averment is omitted, the court will not dismiss the bill absolutely in every case but will give the plaintiffs leave to amend the bill by the insertion of such averment, provided the so doing does not alter the character and objects of the suit so as to make it essentially a new suit. (p. 528.)

5. In such suit all the plaintiffs and all those, on whose behalf it is brought, must have a common cause of action and represent a single and entire claim or interest. The grievance complained of must be the same as to all, so that there could not be on the facts stated in the bill a decree dismissing the bill as to some and sustaining it as to others, should some of the facts alleged be proven and others not proven. If this common cause is not stated in the bill, it should be dismissed on demurrer. (p. 532.)

6. If a dog-tax be assessed by a county court under the 23d chapter of the Acts of 1881, and a bill be filed by several owners of dogs in a particular district in the county for themselves and all other owners of dogs in that particular district to enjoin the collection of such dog-tax in said district then in the hands of a constable of such district for collection, in which the county court of

the county, the sheriff of the county, to whom under the law the tax is to be paid over, and the constable of the district, whose duty it is to collect the tax, are made defendants, such bill ought to be dismissed on demurrer, even though this act of the legislature was unconstitutional and the tax illegal, because there are neither proper parties to such bill, plaintiffs or defendants, nor is the object of such bill one which ought to be granted; the injury, if this dog-tax be illegal, is common to all the owners of dogs in the county; and if these plaintiffs had filed a bill on behalf of themselves and all other owners of dogs in the county subject to this tax, they might sustain their suit to enjoin the collection of any part of such illegal tax in any part of the county. But the bill as filed was so essentially different from the bill, which should have been filed, that on sustaining a demurrer to such bill the court ought not to allow it to be amended and converted into the bill, which as stated above could be sustained, as this should be regarded as a distinct suit and not as an amendment to the original bill.    (p. 530.)

GREEN, JUDGE, furnishes the following statement of the case:

Joseph V. Williams, George F. Cunningham and Edward Williams suing on behalf of themselves and other tax-payers of Grant district in Grant county, filed their bill in the circuit court of Grant county against the county court of said county, A. W. Coler and Morgan T. Smith constables of said district and A. C. Scherr sheriff of said county. In their bill they alleged that they are residents and tax-payers of said Grant district in said county, and that said county court on June 16, 1881, professing to act in pursuance of ch. 23 of the Acts of the Legislature of West Virginia of 1881 levied fifty cents on every male dog and $1.00 on every female dog in said county to be paid by the persons respectively, in whose name the dog shall be listed; and further ordered that after the payment of a reasonable compensation to the assessor and clerk for services rendered under said act, to be paid out of the fund arising from the dog-tax, the residue of said fund should be appropriated to pay for sheep destroyed by dogs, said payments to be made in accordance with and subject to secs. 5 and 6 of said chapter and the residue of the money arising from said dog-tax, after the payment of said claims should be appropriated to the general fund of said county, all of which appeared from a copy of said order filed with the bill as an exhibit; that the assessor of said county then

62

proceeded to list all dogs in Grant district and returned two copies of said list to the clerk of said county court, and said clerk entered on said list taxes against the owners of said dogs in said list named at the rate of fifty cents for each male dog and $1.00 for each female dog, and then delivered a copy to the defendant A. W. Coler, who is a constable for said Grant district, to collect the taxes thereon. A copy of said list so delivered is filed as an exhibit with the bill.

The bill further alleges, that on said list the plaintiff, George Cunningham, is charged with $3.00 of taxes, the plaintiff, James V. Williams, with $2.00 and the plaintiff, Edward Williams, with $2.00. And said constable, A. W. Coler, is proceeding to collect these illegal taxes from the residents and tax-payers of Grant district and has declared his purpose to levy on the property of those, who do not pay, and sell the same. The plaintiffs further allege, that a part of said list of illegal taxes on dogs was then in the hands of Morgan T. Smith, who was also a constable of said district; and that he had levied on a buggy the property of the plaintiff, Joseph V. Williams, and has given public notice, that persons, who do not pay this dog-tax by January 10, 1882, will incur costs. A copy of this notice is filed with the bill. The plaintiffs allege further, that said Smith had no pretence of authority to collect this dog-tax, as the list had been delivered by the clerk not to him but to Coler, yet he had advertised said buggy for sale. A copy of the advertisement is filed with the bill which concludes thus:

"And plaintiffs say that they are advised that the action of said defendant, the county court of Grant county, in levying the said taxes on dogs was illegal and void, and that neither the plaintiffs nor any of the tax payers named in said list can be compelled to pay said taxes. First, because the said taxes are not laid equally and uniformly throughout the State.

"Second. Because the property upon which said taxes is assessed is not taxed in proportion to its value, ascertained as directed by law, as required by the constitution of this State.

"Third. Because the said county court of Grant county has no power to levy and collect a license-tax for county-purposes, if this is properly called a license-tax.

"Fourth. Because it is the design and purpose of the said defendants under the pretence of levying a tax for public purposes to take the private property of the plaintiffs and the other tax-payers of said county and district, who are assessed with said dog-tax, against their consent and pay it over to other private citizens of said county "to pay for sheep destroyed by dogs," losses, for which plaintiffs are in no way responsible, and to which they have not in any way contributed.

"And plaintiffs say, that if they and the other tax-payers aforesaid are obliged and compelled to pay said tax, the money derived therefrom will be paid over by the constable, who collects the same, into the hands of the said defendant, Arnold C. Scherr, the sheriff of Grant county, and will be paid out by him to other private citizens of said county, as ordered by the said county court in the order entered by it on June 16, 1881, hereinbefore mentioned.

"The plaintiffs therefore pray that the said 'the county court of Grant county,' A. W. Coler, constable of said county, Morgan T. Smith, constable of said county, and Arnold C. Scherr, sheriff of said county, may be made defendants to this bill, and may be required to answer the same, and that a writ of injunction may be awarded the plaintiffs, restraining the said constables A. W. Coler and Morgan T. Smith, or either of them, from levying upon and selling the property of the plaintiffs, or any of them, for the enforcement of said tax on dogs; and also restraining the said constables, or either of them, from collecting in any manner the said tax on dogs assessed against the plaintiffs and other tax-payers of said Grant district of Grant county and also restraining the said county court of Grant county from appropriating any money which has been or may be collected from said tax on dogs or from any other source to the payment of losses to private individuals from the destruction of sheep by dogs, and also restraining the said Arnold C. Scherr, the sheriff of said Grant county, from paying out any funds or money that may come into his hands from said tax on dogs to private persons or individuals for losses or on claims for losses occasioned by the destruction of sheep by dogs. And that the plaintiffs may have such other and further re-

lief as the nature of their case may require or the court may see fit to grant."

On January 26, 1882, an injunction was awarded as prayed for, to take effect on the plaintiffs or some one of them giving bond before the clerk with security to be approved by him in the penalty of $500.00, and with conditions to pay all costs, that might be awarded against them and all damages, which might be incurred by the granting of said injunction, if it should be dissolved. The injunction-bond required was given, and the following final decree was entered April 3, 1883:

"This day came the defendants, by their attorneys, and demurred to the complainant's bill on the ground of want of proper parties, and because said bill is not filed on behalf of all the tax-payers of Grant county similarly situated to complainants, and because all the constables of Grant county are not made defendants to the bill, which being argued by counsel is overruled by the court, and this cause coming on April 3, 1883, upon the motion of the defendants to dissolve the injunction heretofore awarded against the defendants, upon consideration whereof, the court being of opinion that said injunction was properly awarded, doth adjudge, order and decree that the said injunction be and the same is hereby perpetuated, and that the defendants and each of them be perpetually enjoined and restrained from collecting the dog-tax mentioned in the bill from the complainants or any other person within the district for which the defendants Coler and Smith are constables."

On the petition of the county court of Grant an appeal was granted to this decree.

*F. M. Reynolds* for appellant.

*George E. Price* for appellee.

GREEN, JUDGE:

This was an injunction to stop the collection of what is known as the dog-tax levied by the county court of Grant county under ch. 23 of the Acts of 1881, and to restrain the county court of Grant from appropriating any money arising from this dog-tax or from any other source to the payment

of losses to private individuals by the destruction of sheep by dogs, and to restrain the sheriff of said county from paying out for said purpose any funds that might come into his hands from this dog-tax.   This act by its tenth section (see p. 270 of Acts of 1881,) provided, that it should not take effect in any of twenty-eight counties, therein named, until the same was adopted by a vote of the people of such county in the manner provided in the eleventh section of this act.   But Grant was not one of these twenty-eight counties, so that this act was in operation in Grant county from its passage, March 11, 1881, provided such act is not null and void because unconstitutional.   The county court of Grant, as shown by the bill, levied this dog-tax on June 16, 1881.

The principle question intended to be raised by the bill in this cause is:  Was this act of March 11, 1881, (ch. 23 of Acts of 1881) constitutional ?   Before considering this question we must first consider, whether it is properly raised in a suit of this character, and if so, whether there are the necessary and proper parties to this cause to justify this Court in deciding in this cause whether said act is or is not constitutional.

I shall therefore first consider, whether a court of equity will enjoin the collection of a county-tax, which has been illegally and unconstitutionally assessed, or will leave each tax-payer severally to his legal remedies, after the tax has been wrongfully enforced against him.   It may be regarded as well settled, that the mere illegality of the tax complained of or its injustice or irregularity of itself gives no right to an injunction in a court of equity.   To entitle a party to such relief, he must bring his case under some acknowledged head of equity-jurisdiction.   (*Dow* v. *Chicago*, 11 Wall. 108 ; *Hannerwinkle* v. *Georgetown*, 15 Wall. 548 ; *Brewer* v. *Springfield*, 97 Mass. 152 ; *Durant* v. *Easton*, 98 Mass. 469 ; *Lovel* v. *Charlestown*, 99 Mass. 208 ; *Whiting* v. *Boston*, 106 Mass. 89 ; *Hannersville* v. *Charlestown*, 106 Mass. 350 ; *Rockingham Savings Bank* v. *Portsmouth*, 52 N. H. 17 ; *Deane* v. *Todd*, 22 Mo. 90 ; *Sayre* v. *Tompkins*, 73 Mo. 423 ; *Barrow* v. *Davis* 46 Mo. 394 ; *McPike* v. *Pew*, 48 Mo. 525 ; *Baltimore* v. *Baltimore & Ohio R. R. Co.*, 21 Md. 50.)   But there is a large number of decisions by courts of the greatest respectabilty to the effect, that if a party or parties bring such a suit properly,

they place themselves and their cause under an acknowledged head of equity-jurisdiction, the avoiding of a multiplicity of suits, and are therefore entitled to an injunction to stay the collection of such illegal and unconstitutional tax. On the other hand there are many equally respectable courts who refuse to grant an injunction or entertain jurisdiction in such case, holding this is not the multiplicity of suits to be avoided which confers equity-jurisdiction. These cases decide, that a court of equity will not exercise jurisdiction or grant relief upon the doctrine of preventing a multiplicity of suits, whether the suit be brought by a single tax-payer and property-owner or by one or more suing on behalf of himself and others or by many individuals united as co-plaintiffs to restrain the enforcement of, or to set aside and annul, or to be otherwise relieved from any local municipal assessment or any tax purely personal and not made a lien upon real property laid by a county, town, city or district, whereby a public indebtedness is or would be enhanced, upon the ground that such assessment, tax, official proceeding or public debt was illegal and either voidable or void. (*Dodd* v. *Hartford*, 25 Conn. 232, 234; *Sheldon* v. *School District*, 25 Conn. 224, 228; *Youngblood* v. *School District*, 32 Mich. 406; *Howell* v. *City of Buffalo*, 2 Abb. App. Dec. 412, 416; *Bouton* v. *Brooklyn*, 15 Barb. 375, 387, 392, 394; *Harkness* v. *Board of Public Works*, 1 McArthur 121, 127, 133; *Kilbourne* v. *St. John*, 51 N. Y. 21, 27; *Ayres* v. *Lawrence*, 63 Barb. 454; *Tift* v. *Buffolo*, 1 T. & C. 150; *Combs* v. *Supervisors, Id.* 296; *Barnes* v. *Beloit*, 13 Wis. 93; *Newcomb* v. *Horton*, 18 Wis. 566, 568, 569; *Cutting* v. *Gilbert*, 5 Blatch. 259, 261, 263; *Phelps* v. *Watertown*, 61 Barb. 121, 123.)

Some of these decisions are based on the ground that is contrary to public policy and governmental expediency to permit the awarding of such injunction. These cases were much controlled and influenced by the cases of *Doolittle* v. *Supervisors*, 18 N. Y. 155, and *Roosevelt* v. *Draper*, 23 N. Y. 318, which were based on the position, that when local officers, as of a county or city, having *quasi* legislative and administrative functions do some official act, which is illegal or in excess of their powers, an individual citizen, who

suffers thereby only the injuries, which are sustained in common by all other members of the community—that is, suffers no special injury, has no cause of action whatever. His only redress in such case is an appeal to the legislature or to the voters to elect officers, who will repeal or nullify the illegal and oppressive acts complained of. But as these grounds are not taken in many of the cases cited, it is to be presumed, that they were regarded as untenable or at least questionable. The ground, on which these other cases are based, is that the plaintiffs in such a suit, though it be brought on behalf of themselves and of all others, do not show a case for the application of the rule for the prevention of a multiplicity of suits, as no one of the plaintiffs is threatened with many suits or much litigation. As this is the much more plausible reason, on which to base decisions of this character, I will set out their reasoning in the language of two of the ablest of the judges, who have entertained these views in order that their full force and weight may be distinctly seen and appreciated.

In *Dodd et. al.* v. *City of Hartford*, 25 Conn. 232, Dodd and thirty-two others filed a bill in behalf of themselves and others against the authorities of Hartford praying an injunction restraining the defendants from enforcing the collection of certain assessments for the expenses of constructing a sewer in said city, for the enforcement of which a warrant of distress had been issued and levied on the goods of Dodd, and like steps were threatened to be taken to enforce the tax against the others. The bill stated these facts, and for reasons stated the assessment of this tax was claimed to be illegal and void. The bill further stated, that Dodd had commenced against these authorities of Hartford City an action of trespass, and that unless they were enjoined from collecting this illegal tax, some 300 separate actions of like character would have to be instituted, causing great expense and vexation; and the bill prayed, that in order to prevent a multiplicity of suits and to determine the rights of the parties, the defendants might be enjoined from collecting this tax or assessment. The bill was demurred to, and the demurrer was sustained. In pronouncing the opinion of the supreme court of errors Seymour, Judge, says on pages 237 and 238:

"We are of opinion that the court has no jurisdiction to interpose by way of injunction as prayed for. No property, right or franchise held by the plaintiffs in common is claimed to be affected by the proceedings of the city. The assessments are against the plaintiffs severally, not against them jointly. If the warrants are collected and any of these parties have occasion to bring suits at law, their suits must be several and separate; they certainly can not join in an action at law against the city or against the collector. In respect to each of these plaintiffs, taking his case separately, it is difficult to see why he has not adequate remedy at law. There is no averment that the real estate of any of the parties has been or can be levied upon. The warrant authorized the taking of personal estate only. No irreparable injury can arise from the levy. If the proceedings of the common council are irregular and void, as the plaintiffs claim they are, an action at law will lie to recover all the damages which shall be sustained by the levy, and the question of the legality of the assessment will then be tried, in its appropriate forum, a court of law. The claim most pressed by the plaintiffs, is that the court ought to entertain jurisdiction in order to prevent the multiplicity of suits. But no one of these petitioners has any interest in the suit which another of them may be called upon to institute. They can not individually complain that others are compelled to sue, for they have no share in the expenses or vexation of each others suits. The multiplicity of suits which the bill seeks to avoid does not effect injuriously any one of the plaintiffs. No one of them has any occasion to expect any such multiplicity affecting himself. One suit is all that any one of them has to fear and the object of this bill would seem to be, to relieve these parties severally from their one suit, and to consolidate the apprehended litigation. In other words to enforce a consolidation rule, by means of the extraordinary power of a court of chancery. If the assessment were against one person only, it is not claimed that he could transfer from a court of law to a court of equity, the question of his liability. But how is the condition of any one of these petitioners the worse, because others are assessed for the same improvement. It would undoubtedly be convenient to try the questions rela-

ting to these warrants in one comprehensive law suit.    But it does not seem to the court that the case presented by the bill is one of such irreparable injury, or of inadequate relief at law, as to warrant as in taking it away from the legal tribunals.    There are also reasons of policy, founded on the necessity of speedy collection of taxes, which ought to prevent a court of chancery from suspending these proceedings, except upon the clearest grounds."

Though no authorities are cited to support these views, yet I have thought it proper to quote this opinion at length, because it presents in the strongest manner the reasons, why an injunction should not be awarded in a case similar to the one presented by the bill in the cause before us.    We will presently see however, that the convenience of trying the questions, which arise in such cases, in one comprehensive suit are so great, that as they can not be tried in one suit at law, a court of equity according to the decided weight of authority now will interpose to avoid this great multiplicity of suits and that too despite the necessity of the speedy collection of taxes.    The above case was decided in 1856.    But it must be admitted, that there are a number of courts of the highest respectability, who still entertain views very like to those expressed in this opinion.    Thus in *Younyblood et al* v. *Sexton*, 32 Mich. 400, decided in 1875 it was held, that the tax imposed by the liquor-tax-law of Michigan passed in 1875 being a personal tax merely, its collection could not be enjoined, even though it was illegal, the ordinary legal remedies being sufficient for such cases.    Cooley, judge, in pronouncing the opinion of the court, says :

"The bill in this case was filed to restrain the collection from the several complainants of a tax assessed against them separately in respect to the business in which each is engaged. It is a personal tax purely.    It was decided at an early day in this State that equity has no jurisdiction to restrain the collection of a personal tax, even conceding it to be illegal; the ordinary legal remedies being ample for the parties' protection.    *Williams* v. *Detroit*, 2 Mich. 560.    The principle has ever since been regarded as not open to controversy in this State, and it was applied without its soundness being contested in *Henry* v. *Gregory*, 29 Mich. 68, decided last year.

63

In other States it is supported by a strong preponderance of authority. *Brewer* v. *Springfield,* 97 Mass. 152; *Durant* v. *Eaton,* 98 Mass. 469; *Lovel* v. *Charlestown,* 99 Mass. 208; *Whiting* v. *Boston,* 106 Mass. 89; *Hannerville* v. *Charlestown,* 106 Mass. 350; *Rockingham Savings Bank* v. *Portsmouth,* 52 N. H. 17; *Dodd* v. *Hartford,* 25 Conn. 232; *Riter* v. *Patch,* 12 Cal. 298; *Beni* v. *Patch,* 12 Cal. 299; *Worth* v. *Board &c.,* Winst. Eq. (N. C.) 70; *Van Cott* v. *Supervisors,* 18 Wis. 247; *Greene* v. *Munford,* 5 R. I. 472; *McCoy* v. *Chillicothe,* 3 Ohio 370; *Connolly* v. *Chedie,* 6 Nev. 322; *Deane* v. *Todd,* 22 Mo. 90; *Sayre* v. *Tompkins,* 23 Mo. 443; *Barrow* v. *Davis,* 46 Mo. 394; *McPike* v. *Pew,* 48 Mo. 525; *Brooklyn* v. *Meserole,* 26 Wend. 132; *Intendant* v. *Pippin,* 31 Ala. 542; *Baltimore* v. *Baltimore & Ohio R. R. Co.,* 21 Md. 50; *Dow* v. *Chicago,* 17 Wall. 109; *Hannerwinkle* v. *Georgetown,* 15 Wall. 545.

\*       \*       \*       \*       \*       \*       \*       \*

" The grounds suggested, but not argued, as giving equitable jurisdiction in this case are, first, that thereby a multiplicity of suits may be avoided. \* \* \* If complainants rely upon the jurisdiction of equity to take cognizance of a controversy when thereby a multiplicity of suits may be prevented, the reliance fails, because the principles which govern that jurisdiction have no application in this case. It is sometimes admissable when many parties are alike affected or threatened by one illegal act, that they shall unite to restrain it; and this has been done in this State in the case of an illegal assessment on lands. *Scofield* v. *Lansing,* 17 Mich. 437. But the cases are very few and peculiar when this can be permitted, unless each of the complainants have an equitable action on his own behalf. Now the nature of this case is such that each of these complainants, if the tax is invalid, has a remedy at law which is as complete and ample as the law gives in other cases. He may resist the process as he might any other trespass, or he may pay the money under protest, and at once sue and recover it back. But no other complainant has any joint interest with him in resisting this tax. The sum demanded of each is distinct and separate and it does not concern one of the complainants whether another pays or not. All the joint interest the parties have is a joint interest in a question of law; just such an interest as

might exist in any case where separate demands are made of several persons. Such a common interest there might be it several persons should give several promissory notes on distinct purchases of a worthless article; and such then might have been under the former prohibition law had demands been made against several persons for liquors illegally sold to them. We venture to say that it would not be seriously suggested that a common interest in any such question of law, where the legal interest of the parties were wholly distinct, could constitute any ground of equitable jurisdiction, when the several controversies affected by the question were purely legal controversies. Suits do not become of equitable cognizance because of their number merely. This was affirmed in *Inpeen County* v. *Bart*, Har. Ch'y 157, and in the two cases of *Sheldon* v. *School District*, 25 Conn. 224, and *Dodd* v. *Hartford, Ib.* 232, which in their facts, so far as this question is concerned, were like the present case, with a single exception which is not to the advantage of these complainants. In those cases the single assessment of a school-tax was involved, and the parties concerned if permitted to unite might have had the whole controversy determined in one suit.

"In this case the controversy is either separate, as the tax is several against each individual, or it is general, as it affects all the persons taxed under the law. Considered as a controversy which affects all the persons taxed, this suit would wholly fail in the purpose of preventing a multiplicity of suits, because the court in which it was brought has only a local and limited jurisdiction. Other suits might be brought outside of Detroit, and in every county of the State; and at best this suit would only reduce the number of suits while it could not prevent a multiplicity of them. On this general subject we content ourselves with referring further to *Jones* v. *Garcia*, 1 Turn. & Russ. 297; *Yeaton* v. *Lennox*, 8 Pet. 123; Adams Eq. 198, 202."

The grounds for refusing an injunction in a cause like the one before us are in this opinion of Judge Cooley presented in their full force. But very few of the cases cited by Judge Cooley give really any support to the views expressed by him. Nearly all of them simply decide, what must be regarded as well settled, that the mere illegality of a tax

complained of or its injustice or irregularity gives no right to an injunction in a court of equity, there being no grounds alleged in the bills in nearly all these cases, why a court of equity should assume jurisdiction under the head of avoiding a multiplicity of suits or under any other acknowledged head of equity-jurisdiction.

These views of Judge Cooley, though supported by many authorities of great weight other than those cited by him, are, repudiated by the decided weight of authority. Pomeroy in his Equity Jurisprudence (see note to § 260, vol. 1, p. 278) arranges the cases when courts of equity have entertained jurisdiction and when necessary have awarded injunctions to stay the collection of illegal taxes levied by counties, cities and districts and even states, or have entertained suits and interposed to annul proceedings, which would necessarily result in a public debt, when such proceedings by public authorities were illegal, the ground of such interposition being the avoiding of a multiplicity of suits. In some of these cases the suit was brought by a number of tax-payers or by one suing on behalf of himself and all others. The following is his list of cases of this character : *Attorney-General* v. *Peelis*, 2 S. & S. 67, 76 ; *Newmeyer* v. *Mo. & Miss. R. R.*, 52 Mo. 81, 84–89; *Rice* v. *Smith*, 9 Ia. 570, 576 ; *Stokes* v. *Salt Co.* 10 Ia. 166 ; *McMillan* v. *Boyles*, 14 Ia. 107 ; *Roch* v. *Wallace*, 14 Ia. 593 ; *Ten Eyck* v. *Keokuck*, 15 Ia. 486; *Chamberlain* v. *Burlington*, 19 Ia. 395; *Williams* v. *Peinny*, 25 Ia. 436; *Hanson* v. *Vernon*, 27 Ia. 28 ; *Zorger* v. *Township of Rapids*, 36 Ia. 175 ; *Board of Commissioners* v. *Brown*, 23 Ind. 161 ; *Lafayette* v. *Fowler*, 24 Ind. 140 ; *Noble* v. *Vincennes*, 42 *Id.* 125 ; *Board of Commissioners* v. *Markle*, 46 *Id.* 96, 103–105 ; *Galloway* v. *Chatham R. R.*, 63 N. C. 147, 149, 150 ; *Brodnax* v. *Groom*, 64 *Id.* 244, 246, 247 ; *Worth* v. *Board of Commissioners*, 1 Winst. Eq. (60 N. C. 617); *Vanover* v. *Davis*, 27 Ga. 354, 358 ; *Mott* v. *Penn. R. R.*, 30 Penn. St. 9 ; *Sharpless* v. *Philadelphia*, 21 *Id.* 148 ; *Moers* v. *Redding*, 21 *Id.* 188; *Ball* v. *Read*, 13 Grat 78, 86, 87 ; *Mayor of Baltimore* v. *Gill*, 31 Md. 375, 392, 395 ; *Barr* v. *Denniston*, 19 N. H. 170–180 ; *Merrill* v. *Plainfield*, 45 *Id.* 126, 134 ; *New London* v. *Brainard*, 22 Conn. 552, 556, 557; *Webster* v. *Town of Harrington*, 32 *Id.* 131, 140; *Terrett* v. *Town*

*of Sharon,* 34 *Id.* 105; *Scofield* v. *Eighth School District,* 27 *Id.* 499, 504; *Colton* v. *Hanchett,* Ill. 615, 618; *Robertson* v. *City of Rockford,* 21 *Id.* 208; *Butler* v. *Dunham,* 27 *Id.* 474; *Drake* v. *Philips,* 40 *Id.* 388, 393; *Vielley* v. *Thompson,* 44 *Id.* 9–13; *Allison* v. *Louisville, &c. R. R.,* 9 Bush 247, 252; *Lane* v. *Schomp,* 5 C. E. Green, (20 N. J. Eq.) 82, 89; *Mesen* v. *Port Washington,* 37 Wis. 168.

The following are the cases given by Mr. Pomeroy, in which the suit was brought by only one tax-payer, who on the face of the bill purported to sue for himself alone : *Board of Commissioners* v. *Templeton,* 51 Ind. 266; *Board of Commissioners* v. *McClintock,* 51 *Id.* 425; *Board of Commissioners* v. *Markle,* 46 *Id.* 96, 103–105; *Lafayette* v. *Cox,* 5 *Id.* 38; *Mill* v. *Jenkinson,* 15 *Id.* 425; *Coffman* v. *Keightley,* 24 *Id.* 509; *Oliver* v. *Keightley,* 24 *Id.* 514; *Nave* v. *King,* 27 *Id.* 356; *Board of Commissioners* v. *McCarty,* 27 *Id.* 475; *Harney* v. *Indianapolis Railroad,* 32 *Id.* 244, 247, 248; *English* v. *Smook,* 34 *Id.* 115; *Williams* v. *Peinney,* 25 *Ia.* 436; *Hanson* v. *Vernon,* 27 *Id.* 28; *Zorger* v. *Township of Rapids,* 36 *Id.* 175, 180; *Merrell* v. *Plainfield,* 45 N. H. 126, 134; *Webster* v. *Town of Harwinton,* 32 Conn. 131, 140; *Terrett* v. *Town of Sharon,* 34 *Id.* 105; *Prettyman* v. *Supervisors,* 19 Ill. 305, 311; *Taylor* v. *Thompson,* 42 *Id.* 9; *Cleghorn* v. *Postlewaite,* 43 *Id.* 428, 431; *Veiley* v. *Thompson,* 44 *Id.* 9, 13; *Clarke* v. *Supervisors,* 27 *Id.* 305, 311; *Allison* v. *Louisville, &c. Railroad,* 9 Bush 247, 252. In reference to these cases Pomeroy says :" It should be observed that all of this latter group of cases arose in States, where the courts had already decided that a tax-suit by many tax-payers joined as plaintiffs or by one suing on behalf of the others would be sustained on the ground of preventing a multiplicity of suits, and they regard a suit by one tax-payer alone as substantially the same in its effects, and treated it in the same manner, citing the same precedents indiscriminately in support of the one or the other form. Indeed, in many of these latter cases, the court expressly said that the suit might be brought in either form, by many tax-payers joining as plaintiffs, by one suing on behalf of the others, or by one suing alone. No distinction in principle was made between the three."

Upon the authority of these cases Pomeroy in his text

says: "In a large number of the States the rule has been settled in well considered and often repeated adjudications by courts of the highest character for ability and learning, that a suit in equity will be sustained when brought by a number of tax-payers joined as co-plaintiffs, or by one tax-payer suing on behalf of himself and others similarly situated, or sometimes by a single tax-payer suing on his own account, to enjoin the enforcement and collection, and to set aside and annul any and every kind of tax or assessment laid by a county, town or city authorities, either for general or special purposes, whether it be entirely personal in its nature and liability, or whether it be made a lien on the property of each tax-payer, whenever such tax is illegal; and in like manner to set aside and annul every illegal public official action or proceeding of county, town or city authorities whereby a debt against said county, town or city would be unlawfully created, the public burdens upon the community would be unlawfully enhanced, and the amount of future taxation would be unlawfully increased, as for example, unlawful proceedings of municipal authorities to advance money, or to loan the public credit to a railroad, or to bind the municipality in aid of a railroad, or to offer and pay bounties to soldiers, or to erect public buildings, and numerous other analagous proceedings which would necessarily result in a public debt and in taxation for its payment.

" In the face of every sort of objection urged against a judicial interference with the governmental and executive functions of taxation, these courts have uniformly held that the legal remedy of the individual tax-payer either by action for damages, or perhaps by *certiorari* was wholly inadequate; and that to restrict him to such imperfect remedy would, in most instances, be a substantial denial of justice which conclusion is in my opinion unquestionably true. The courts have therefore sustained these equitable suits, and have granted the relief, and have uniformly placed their decisions upon the inherent jurisdiction of equity to interfere for the prevention of a multiplicity of suits." And he adds: " the result has demonstrated the fact that complete and final relief may be given to an entire community by means of one judicial decree which would otherwise require an indefinite

amount, of separate litigation by individuals, even if it were attainable by any means. In several of the States there is a long series of these cases extending through a considerable period of time, and it may happen that in the earlier decisions of such a series the court has stated the reasons for its judgment at large and has expressly announced the principle of preventing a multiplicity of suits as the ground of its jurisdiction while in succeeding ones the judges have not thought it necessary to repeat the reasons and grounds which had already been fully explained."

I fully concur with Pomeroy, that these cases do clearly establish the principle, he has deduced from them. I also concur with him, that these principles settled by these decisions are sound ; and that the principles laid down by Judge Cooley in the opinion, which I have quoted hereinbefore, are not only unsound but are opposed to the decided weight of authority. In fact Judge Cooley in his work on taxation in the edition of 1879 in effect admits, that his views as above expressed are opposed to the decided weight of authority. He there says : "When the illegality extends to the whole assessment, or when it affects in the same manner a number of persons, so that the question involved can be presented without confusion by one bill filed by all or any number of those affected, there seems to be no sufficient reason why a joint bill should not be permitted. The reasons favoring it are, that it avoids the necessity of a multiplicity of suits and the attendant trouble and expenses; and the objection that the interest of the complainants are several is sufficiently met by the fact that complete justice may be done to all in one suit on the single issue ; whereas if the parties did not join, the same issue must be passed upon in separate suits brought by the several complainants. Although there has been some hesitation the weight of authority is decidedly in favor or supporting them and this mode of redress is now commonly resorted to when the case is appropriate to it." Cooley on Taxation, pp. 543, 544.

I have said I concur in the conclusion reached by Pomeroy in his Equity Jurisprudence, and that it is sustained by the numerous cases cited in the note. But an examination of these cases will show, that some of them bear but slightly on

the subject; that others are improperly classified; that in many of them, while a court of equity exercised jurisdiction, it was done apparently without objection, and no reason is assigned for the exercise of the jurisdiction; that in many of them the court exercised jurisdiction without regard to the form, in which the suits were instituted, some of them being instituted by a single tax-payer complainant, others by several tax-payers, and others by one or more tax-payers for himself or themselves and all other tax-payers having like interests; and that in most of the cases the courts paid no attention to whether the suit was brought in one form or in the other. In some of the cases however the question was raised 'as to the jurisdiction of a court of equity; and the jurisdiction was decided to exist, and then reasons were given for assuming it. Thus in the case cited as *The Attorney-General* v. *Peelis*, 2 S. & S. 67–76, reported in the second volume of Simmon & Stuart found in the latter part of 1 Eng. Chy. Reports, p. 67, this question of the jurisdiction of a court of equity in such a case was considered. It was a bill, in which there were ten plaintiffs, who sued on behalf of themselves and all other tenants and occupiers of houses situated in Great Bolton in Lancaster county subject to the assessment complained of, and the suit was brought against certain commissioners to lay out and establish the town of Great Bolton under an act of parliament conferring certain powers on them, under which they levied a tax or rate on the inhabitants of the town illegally, as the bill claims; and it asked that they be enjoined from enforcing this tax. This bill was demurred to, and the demurrer was overruled. The vice chancellor says:

"To this bill the defendants have put in a general demurrer, and the first point made by them is, that the plaintiffs to the bill have no right to sue on behalf of all other persons on whom the rate in question is assessed; and a late case of *Jones* v. *Del Rio*, before the Lord Chancellor, is cited as authority for that proposition. Then the plaintiff being one of the subscribers to the Perrivian loan, filed a bill on behalf of himself and all other subscribers to that loan, to rescind the contracts of subscription, and to have the money returned. The Lord Chancellor held the plaintiff was not entitled in that case to represent all others of the subscribers, for it did

not necessarily follow that every subscriber should, like the plaintiff, wish to retire from the speculation, and that every individual must judge for himself in that respect.    The principle in that case has no application here.    The object of the bill is to avoid payment of the assessment in question, and every individual assessment has in that respect one common interest."

It will be observed, that though the attorney-general was made a party plaintiff in this suit, yet the court does not base its decision on the ground that he representing the general public had a right to institute the suit, a position which would seem to be law in New York and perhaps in some other States; but the reasons for sustaining the jurisdiction of a court of equity assigned by the English court necessarily leads to the conclusion, that, if it had been instituted by the tax-payers without joining the attorney-general with them, the court would have still entertained the suit. In truth it would seem from the reasoning of the Vice Chancellor, that he ought not to have been a party, though he says nothing whatever about it.

In the case of the *Board of Commissioners of Clay county et al* v. *Markle et al*, 46 Ind. 96, the object of the bill was to prevent the re-location of Clay county and to enjoin the Board of Commissioners from letting a contract for the erection of a court-house and jail at the proposed county-seat. The plaintiffs in the bill were nine tax-payers, the defendants the Board of Commissioners of Clay county and the persons composing the Board of Commissioners, and the bill claims that the removal of the court-house under the proceedings before these commissioners would be illegal, but that they will make the removal nevertheless, and prays that they be enjoined from so doing.    The bill was demurred to, and the court say p. 103 :

"The appellants say the demurrer ought to have been sustained, because the contemplated injury would be to the plaintiffs below in common with other tax-payers, citizens and voters of the county, and that courts of equity will not enjoin the commission of an injury at the suit of one of the parties, under such circumstances, and only when the threatened injury will be special to the party asking the injunction.    *Doo-*

*little* v. *Supervisor's, &c.*, 18 N. Y. 155, sustaining this position. Other authorities hold the same doctrine. The rulings on the question are not uniform. In some of the States, injunctions are granted in actions by an individual to restrain municipal officers from doing illegal acts, and transcending their lawful powers, when the effect would be to impose upon him an unlawful tax or increase his burden of taxation."

Judge Dillon in his work on Municipal Corporations, considers the question quite fully, and says if the ordinary principle, which obtains as to public nuisances, is applied, it must be admitted, when the duty about to be violated by the corporation or its officers is public in its nature, and affects all inhabitants alike, that one not suffering any special injury can not in his own name, or by uniting with others, maintain a bill to enjoin. The reason urged against it is, that if one can maintain such an action, an indefinite number can do the same. He says: "To allow the taxable inhabitant to maintain a bill for an injunction to prevent illegal expenditures or appropriations of money, has the advantage of directness and simplicity, and notwithstanding its departure from apparent principles, has had the quite general, but not uniform approval of the courts in this country; and practically, this course has not had the effect to engender a multiplicity of similar suits by separate parties, but a few persons usually unite in one suit which, when, judicially settled, in effect settles the question in controversy." See section 736. And again he says: "Much more clearly can this be done when the right of the public officer of the State to sue is not admitted or does not exist." Section 736*a*. The action is regarded in the nature of public proceeding to test the validity of the acts sought to be impeached. In New York, and, perhaps, other States, the attorney-general is authorized to institute and carry on actions for such purposes.

In the *Board &c.* v. *Markle*, 46 Ind. 104 the court say: " It has been settled in this State that the remedy may be had by any tax-payer in his own name. *The City of Lafayette* v. *Cox*, 5 Ind. 38 ; *Oliver* v. *Knightley*, 24 Ind. 514. In *Harney* v. *The Indianapolis, &c. R. R. Co.*, 32 Ind. 244, the question was made that the plaintiff as a tax-payer had no such interest in the funds of the county as would enable him to maintain

a suit to prevent an unlawful appropriation thereof.    This
court held the action could be maintained, and said that it
was a common remedy in this State and had been sanctioned
elsewhere.    That was an action to restrain the county from
making an unlawful subscription and donation to a railroad
company.    In *English* v. *Smock*, 34 Ind. 115, the court held
that the injunction ought to have been granted, restraining
the board of county commissioners from negotiating the
county bonds, at the suit of a part of the tax-payers.    In
*Noble* v. *The City of Vincennes*, 42 Ind. 125, it was held that
the city council might be restrained, under certain circum-
stances, from passing an ordinance to aid in the construction
of a railroad.    In this, like all the other cases, the action was
instituted, and the extraordinary remedy sought, by one or
more tax-payers in his or their own names.    In some of them
the doctrine now contended for was not mentioned.    See *The
City of New London* v. *Brainard*, 22 Conn. 552; *Scofield* v.
*Eighth School District*, 27 Conn. 499.    The same has been held
in Iowa; *Rice* v. *Smith*, 9 Ia. 570, which was to enjoin the
erection of a court-house at a place, which was not the county
seat of the county. In Illinois, *Colton* v. *Hanchett*, 13 Ill. 615.
In Maryland, *The Mayor of Baltimore* v. *Gill*, 31 Md. 375.
In New Hampshire, *Merrell* v. *Plainfield*, 45 N. H. 126.    In
many of the cases which we have examined, the question was
made and passed upon, and in others the right to maintain
the action by an individual was recognized without any
question.    In *The Mayor, &c. of Baltimore* v. *Gill*, 31 Md.
375, the point was made, and the right maintained by the
court and many authorities reviewed and criticised.    The
distinction between an action to prevent a nuisance, unless
the party may suffer some special damage, and one to prevent
an act which will increase his burdens by illegal taxation, is
pointed out.    In the former, he has no other than an interest
in common with others, while in the latter he has a special in-
terest in the matter, distinct from that of the general public."

The case of *Newmeyer et. al.* v. *Mo. & Miss. R. R. Co. et. al.*,
52 Mo. 81 was a bill in equity filed by the plaintiffs on behalf
of themselves and all other tax-payers, who were similarly
situated with themselves, to set aside an order of the county
court of Macon county making a subscription of $175,000,

to the captal stock of the Missouri and Mississippi Railroad Co., and to have the same declared null and void, and to have the bonds issued to pay the same delivered up and cancelled, because the county court of Macon county, one of the defendants, had no right to make such subscription and issue such bonds. The bill was demurred to and the court in an able opinion delivered by Judge Ewing say p. 84 :

" It seems not to be seriously questioned that upon the facts stated in the bill, which are of course admitted by the demurrer, the plaintiffs are entitled to the relief prayed for if they can maintain this action ; and the only remaining question that we deem it proper to consider is whether the plaintiffs as *tax-payers* of Macon county have stated a title for the relief they claim against the defendants; in other words, whether as such tax-payers they have such an interest in the subject matter of the suit as entitles them to maintain this action. I am not aware that this question has ever been passed upon by this court. In the case of *Hooper* v. *Ely*, 46 Mo. 505, the plaintiff as a *tax-payer* obtained an injunction against the treasurer to restrain him from paying a certain county warrant upon the ground it was issued without authority of law, and also asked an order upon the defendant, the holder, to bring it into court to be cancelled. The only interest the plaintiff had in the subject matter of the suit was that of a *tax-payer* of the county, and his right to maintain it was unquestioned.

" The only other case similar to the one at bar was that of *Steins et. al.* v. *Franklin County et. al.*, 48 Mo. 167, which was a bill in equity brought by the plaintiffs as citizens and tax-payers of Franklin county, asking for a decree declaring a contract and certain orders of the county court of said county void, and requiring a cancellation and delivery of the bonds issued under said contract, and for an injunction restraining their payment, sale or transfer, and restraining the assessment levy or collection of a tax for the purpose of their payment. No point was made as the right of the plaintiffs as tax-payers to maintain the action.

"The grounds, upon which such suits by tax-payers have been held unmaintainable, are that it requires some indivi-

dual interest distinct from that which belongs to every inhabitant of the town or county to give the party complaining a standing in court, when it is an alleged delinquency. in the administration of public affairs which is called in question; and that the ownership of taxable property is not such a peculiarity as to take the case out of the rule; and that the only remedies against an abuse of administrative power tending to taxation is furnished by the elective franchise, or a proceeding on behalf of the State, or in case of an act without jurisdiction in treating the attempt to enforce the illegal tax as an act of trespass.. (Denio, J. in *Roosevelt* v. *Draper et al.*, 23 N. Y. 318; see also *Doolittle et al.* v. *Supervisors, &c.* 18 N. Y. 155.) The case of *Roosevelt* v. *Draper et al.*, 23 N. Y. 318 decided in 1861 is the latest decision on the subject in the court of appeals, to which our attention has been called. We have been referred however to a number of earlier decisions in the courts of that State which hold a contrary doctrine—recognizing the right to maintain such suits; and they have been followed in several other states.

"The first of these that will be noticed is the case of *Christopher et al.* v. *The Mayor et al.*, 13 Barb. 567, which was a proceeding by injunction to restrain defendants from acting under a resolution of the Board of Aldermen relative to the re-building of a market. Held that the plaintiffs as taxpayers had such an interest as entitled them to the relief they asked; that as the necessary effect of the act complained of would be to impose a burden on their real estate, they had an interest as certain and direct as that of stockholders in a monied or other corporation. So in the case of *Milhan* v. *Sharp*, 15 Barb. 195, which was an application for an injunction to restrain defendants from constructing a railway in a certain street of the city of New York, the court say, the plaintiffs being tax-payers to a large amount, have such an interest in preventing the grant in question from being carried into effect, that they had a right to institute the suit in their own names. To the same effect is *Stuyvesant* v. *Pearsoll et al.*, 15 Barb. 244, in which it is held that the court on the complaint of a tax-payer may restrain parties from constructing railroads in the city—the granting of a right to construct which involved a breach of trust on the part of the corpora-

tion. In *De Baun et al.* v. *The Mayor et al.*, 16 Barb. 392, it was held that a person owning real estate in the city of New York and paying taxes on it, might prosecute an action against the corporation on behalf of himself and all other tax-paying citizens to enjoin them from spending the money to be raised by taxation in repairing or paving, in a manner contrary to an express law and tending to add to the taxes of the inhabitants. The same question came before the court again in the case of *Wood* v. *Draper*, 24 Barb. 187, decided in 1857, and after a thorough review of the previous decisions in that court on the subject, the court say : 'It must be regarded as the settled law of this court that it will grant its aid to restrain by injunction the imposition of any tax or burden on the tax-payers of this city contrary to law on a complaint filed by any tax-payer on his own behalf as well as on behalf of others similarly interested.' The correctness of these decisions have been questioned in some later decisions in that State which have been referred to. In *Sharpless* v. *The Mayor of Philadelphia et al.*, 21 Pa. St. 147, the plaintiffs as property-owners filed their bill to enjoin the mayor from carrying into effect certain ordinances of the city which authorized subscriptions by the city to certain railroads. The right of the plaintiffs to maintain this suit was unquestioned. In *Mercer County* v. *Pittsburg & Erie Railroad*, 27 Pa. St. 404, it is said, that as every taxable inhabitant in all measures which increase the taxes he may apply for an injunction against abuses of that character. In a more recent case in this State, decided in 1868, *Pap et al.* v. *Allen*, 58 Pa. St. 388, a bill in equity was filed by the plaintiffs, residents and tax-payers of Philadelphia, against the aldermen of the city to restrain them from exercising, which it was alleged they claimed by virtue of a certain act of assembly, known as the registry act, and charging that a large sum of money would be required from the city treasury to put the act into operation, which as tax-payers they have interested to prevent, and which would be wholly misapplied. The act being unconstitutional, the court say the right of the plaintiffs to interfere on these grounds was not disputed, neither could it have been at any time since the decision in *Sharpless* v. *The Mayor*, 21 Pa. St. 147, and *Moers* v. *City of Reading*,

21 Pa. St. 18. In both it was conceded, that the interest of a tax-payer where money was to be raised by taxation or expended from the treasury, was sufficient to entitle him to proceed in equity to test the validity of the law which proposed the assessment or expenditure. To the same effect is *Mott* v. *The Penn. Railroad Company*, 30 Pa. St. 9.

"The next case to which we refer was decided by the court of appeals of Maryland in 1869. (*The Mayor and City Council of Baltimore* v. *Gill et al*, 31 Md. 375, 394-5.) This was a proceeding to restrain by injunction, appellants, the Mayor *et al*, from carrying out the provision of an ordinance authorizing the borrowing of money to build certain railroads, which was claimed to be constitutional. The complainants were tax-payers on real and personal property situated in Baltimore, and they sued in behalf of themselves and others similarly interested. It was maintained that the plaintiffs had no standing in court, and were not entitled to ask the interposition of a court of equity to restrain by injunction the execution of the ordinance, even though it had been passed in violation of the constitution. It was further maintained that the wrong complained of, was of a public nature affecting the whole public in which the attorney-general as the representative of the State was a necessary party. It was held that the interest of the plaintiffs as tax-payers, was sufficient then to maintain the action, and that the attorney-general was not a necessary party. Bartol, C. J. in delivering the opinion of the court says: 'The case is to be distinguished from cases of public wrongs, in which the general public are alike concerned; that the complainants are tax-payers of the city, and others similarly situated constitute a class specially damaged by the alleged unlawful act, in the increase of the burdens of taxation on their property situated in the city. They have therefore a special interest in the subject matter of the suit, distinct from the general public. The court cite the cases of *New London* v. *Brainard*, 22 Conn. 552; *Webster* v. *Town of Harwinton*, 32 Conn. 131; and *Merrill* v. *Plainfield*, 45 N. H. 126 as distinctly affirming the rights of tax-payers to file a bill of this kind but we have no access to the reports at present. To the same effect are the decisions in Iowa. See *McMillan et al* v. *Lee*

*County*, 3 Iowa 311; *Collins* v. *Ripley County Judge*, 8 Iowa 129.

"The question was before the supreme court of Illinois in the case of *The Board of Supervisors* v. *Keady et al*, 34 Ill. 293, but its consideration was waived by the plaintiffs in error, and the court expressed no opinion upon, remarking that it the question was undetermined in that State.

"I have examined the cases cited in support of the other side or such of them as we have access to :" (These cases were *Davis and Palmer* v. *City of New York*, 2 Duer. 663 and 1 Duer 479; *Doolittle* v. *Supervisors of Brown County*, 18 N. Y. 155; *Miller* v. *Grundy*, 13 Mich. 540; *People* v. *Regents, &c.*, 4 Mich. 98, 4 Mich. 187; *State* v. *Saline County*, 51 Mo. 350; *Roosevelt* v. *Draper*, 23 N. Y. 318; *State, use of Connelly* v. *P. G. R. R. Co.*, 32 Mo. 496;. *Sayre* v. *Tompkins*, 23 Mo. 443; *Barrow* v. *Davis*, 46 Mo. 394; *Lockwood* v. *St. Louis*, 24 Mo. 20; *First National Bank of Hamilton* v. *Meredith*, 44 Mo. 500; *Vitt* v. *Owens*, 42 Mo. 512; also 4 Kernan 234; 4 Duer 192; 2 Johnson Ch'y. 428-92 433-4; 14 Eng. Ch'y. Rep. 123 and 613.) "And upon a careful examination of the subject, I am of opinion that the decisions, which affirm the right of the plaintiffs (or those standing in the same relation to such controversies) to maintain the action, rests upon more solid foundation of principle and reason than those holding the contrary doctrine. And they are commended to our approval as furnishing the only adequate remedy to the injured party from wrongs resulting from unauthorized or illegal acts like these complained of. The injury charged as the result of the acts complained of is a private injury in which the tax-payers of the county of Macon are the individual sufferers, rather than the public. The people out of the county bear no part of the burden ; nor do the people within the county except the tax-payers, bear any part of it. It is therefore an injury peculiar to one class of persons, namely the tax-payers of the county of Macon.

"I am of opinion the action is well brought in the name of the plaintiffs as tax-payers, on behalf of themselves and all others who are similarly interested, and the State is not a necessary party to the suit. The other judges concur."

This opinion is devoted principally to answering the objec-

tions to a suit of the character of the one before us arising from the acts complained of being public acts, in which the general public were affected and no person specially, and that therefore the suit should be brought by the attorney-general as the representative of the general public, and if this can not be done, then there was no legal remedy, but the parties injured could get redress only from the legislature or by the election of other public authorities, who would correct the wrong complained of resulting from the illegal act of public functionaries.   That there was no remedy for wrongs of this character by resort to a court of equity to enjoin its commission, was held in *Roosevelt* v. *Draper et al.*, 23 N. Y. 218, and in *Doolittle et al.* v. *Supervisors, &c.*, 18 N. Y. 155 ; and the reasons for so holding are set out forcibly in those cases but are, I think, unsound as shown by the reason-. ing in the two opinions in *The Board of Commissioners of Clay Co.* v. *Markle et al.*, 46 Ind. 96, and *Newmeyer et al.* v. *Mo. & Miss. R. R. Co. et al.*, 52 Mo. 81, above cited.   The other objection to suits of the character of the one before us, that the mere illegality of the tax complained of gives no right to an injunction in a court of equity, unless the case is brought within some recognized ground of equity-jurisdiction such as the avoiding of a multiplicity of suits, and which is so plausably presented in the opinion of Judge Cooley in *Youngblood* v. *Sexton*, 32 Mich. 409, above quoted; is not met by the reasoning in this Missouri case ; but, it seems to me, it is fairly met by the reasoning of Judge Christiancy in the case of *Scofield et al.* v. *The City of Lansing et al.*, 17 Mich. 437, which was referred to by Judge Cooley in his opinion. Judge Christiancy says p. 443 :

" The bill in this case is filed against the City of Lansing and Lewis C. Loomis, their treasurer and collector by fifty-three separate owners of real estate situate adjacent to and fronting on Cedar Street, and the road in continuation thereof in said city, to restrain the collection of a tax upon the lands of the several complainants along said street, for grading the same; the tax being charged to be illegal, and to constitute a cloud upon the titles of complainants.   The defendants demurred to the bill and the demurrer was sustained in the court below.   The first ground urged in support of the de-

murrer is misjoinder of complainants or multifariousness; they having no joint or common interest in the lands assessed. There is great conflict of authorities upon this question and a review of them would require a treatise. But in view of all the authorities, we do not understand that there is any general or inflexible rule on the subject, so far at least as relates to the joinder of parties complainant. So far as any rule can be said to exist it is one of convenience only, and must depend for its application upon the circumstances of each particular case. Story's Eq. Pl., sec. 530, Adams Eq. 309, 310; *Campbell* v. *Makey*, 1 Mylne & Craig 603. In *Kingston* v. *Price* seventy-two different underwriters upon different policies of insurance, upon which complainants had been severally sued at law for their respective subscriptions had joined in one bill, the object of which was to establish a defence which was common to all. The bill was sustained as not multifarious."

In *Murray* v. *Hay*, 1 Barb. Ch'y 59, the bill was filed by two persons owning in severalty two dwelling houses withnot common interest in the property against a defendant for a nuisance which was a common injury to both, rendering the property of each less valuable. The bill was objected to as multifarious but sustained by the court and in *Ried et al.* v. *Gifford*, 1 Hopkins 416, the bill was held not liable to this objection, though filed by several proprietors of several lands and mills and of several parts of a natural water course to restrain a nuisance caused by an artificial channel cut by a defendant on his own land, the effect of which was to draw off the water. This was held such common injury to all the complainants as to authorize them to join in one bill though the injury sustained by each was separate and distinct.

The principle involved in these cases are not to be distinguished from that in the case before us. While the property or pecuniary interest of the complainants were several, yet the action of the defendants of which the bill complained and for which relief is sought, was identical as to all the complainants. So in the present case, though the interest of complainants in the real estate upon which the tax is assessed is several and distinct, yet the action of the defendants, the proceedings on their part from beginning to end, are iden-

tical as to all the complainants, and effect them all in the same manner. Their claims are entirely consistent with each other. Adams Eq. 313, * * * * each complainant must, under the present bill, make out the same case, and no other, that he would have been bound to make upon a bill filed by him separately; and the same defence as to each complaint is open to the defendants, as if separate bills had been brought by each.

It is therefore difficult to see in advance how the defendants can be embarrassed in their defence by the joinder of the complainants: *And if they can offer no stronger objection to the bill than that fifty-nine separate suits should have been brought against them, instead of one, the bill ought to be sustained on the ground of preventing a multiplicity of suits, and a needless multiplication of costs. The substance of the complaint in the bill is the illegal imposition of the tax; and if illegal as to one, it is equally so as to the other complainants; if valid as to one, it will be valid as to all. The proceedings therefore, for the imposition of the tax will, in all probability, constitute the principal subject of litigation and this is the same as to all. It is true the title of each complainant may be disputed, and they may be each put to the proof. If any one of them should then fail in making out his title, the bill would be dismissed as to him. If in the progress of the cause it should become evident that such embarrassment must arise in consequence of the multiplicity of issues or other complications growing out of the joinder of all these complainants, as to over balance the advantage to be derived from settling the rights of all in one suit, instead of separate suits by each, it is always competent for the court (if no mode of goverance can be devised) to dismiss the bill on this account of their own motion. Greenwood v. Churchhill,* 1 M. & H. 546. But we can not say a priori, that such practical difficulty is likely to arise from the joinder of the complainants. Indeed, we think, such a result highly improbable. We can not therefore sustain the objection on demurrer.*

It is true, this was a tax in this case on lands, which was charged in the bill to be a lien on each lot of land severally for the tax upon it and was thus alleged to be a cloud upon the title of each lot of land; and this might have given a court of equity jurisdiction of a bill filed by one of the lot-owners to remove the cloud from the title of his lot. But the

fifty-nine complainants were, as the opinion shows, entertained as joint complainants, only because they had a right to file this bill to avoid a multiplicity of suits. If these fifty-nine complainants could file a joint-bill to prevent fifty-nine suits either at common law or chancery, it seems perfectly obvious, that had this tax been a mere personal tax, they would have had an equal right to file such a joint bill of injunction to prevent fifty-nine separate common law suits, which it would have been necessary to bring to recover back severally the illegal tax each one had paid; for it certainly makes no difference in giving jurisdiction to a court of equity whether the suits prevented are common law or chancery suits. I consider therefore that the opinion applies equally to the case when the tax complained of is as in the case before us a personal tax, as when it is a tax on land. The portions of the opinion which I have italicised, which contains the gist of the opinion, is as applicable to one species of illegal tax as to another; and I regard it as a satisfactory reply to Judge Cooley's opinion in *Youngblood* v. *Sexton*, 32 Mich. 406.

The real qualifications to the right to enjoin the collection of a tax totally illegal by a joint suit in equity brought by all the tax-payers is to be found clearly laid down in *Kerr et al.* v. *City of Lansing et al.*, 17 Mich. 35. The opinion of the court was pronounced by Judge Campbell. He says, p. 36:

"The bill is filed to enjoin the collection of a grading assessment upon the property described in the bill in which the several complainants have several interests. It is demurred to on various grounds, the first of which is, that it is not so drawn as to show a right in the complainants to join in the prosecution. It is usually a good ground of demurrer to a bill, that the complainants have no joint cause of action or none in which they together represent a single and entire claim or interest. But it is insisted that in order to avoid a multiplicity of suits, one action may be brought by or against all persons who are interested alike in repelling a grievance, or protecting rights, wherein their interests are precisely alike in character and affected in just the same way by the adverse claim or transaction. It is also claimed that, in such

cases, that a part may sue or be sued as representatives of all, when convenience renders such a course essential.

That such an exception is permitted in various cases, is very well settled although the precise case permitting it are not uniformly agreed upon. But in the case before us the bill is not so drawn as to call for any discussion of this subject. Up to a certain point, there is a similitude of grievances. In each case the thing sought to be restrained, is the collection of an assessment, which is alleged to be irregular. In each case, it is ultimately chargeable on land, and purports to be a lien upon it. The irregularities and illegalities in most instances affect one of the complainants as well as another. But there are some irregularities alleged which affect but a part of the complainants. The assessments on certain property is alleged to be invalid because Whitney Jones, Mary Bingham and Nelson W. Clarke, although tenants in common with Kerr and Jerome are not mentioned in the roll, but the entire amount is assessed to the two latter. So, in the case of certain lands belonging to the minor child of H. Lathrop, it is claimed the assessment is void, because not levied against the owners or occupants. It can not be pretended that any of the other complainants are interested in' these private and special greivances and to this extent the bill does not, therefore, make out a common cause. If these specific irregularities should turn out to be the only ones, then the majority of the complainants would have no cause of complaint at all, and Kerr and Jones would have no common ground with the Lathrop heir, and no right to join with her in filing the bill. There is then no authority for this suit in its present form, for the plaintiffs have shown affirmatively, that they do not all stand on the same footing. The decree must be affirmed with costs."

Our conclusion is, that the weight of authority as well as reason justifies the interposition of a court of equity by injunction to stay the enforcement of an unconstitutional tax levied by a county court, provided there are proper parties plaintiffs and defendants to the suit, and it is in a proper form and is not liable to objections like those pointed out in the above case. If because of the conflict of authority and the reasons, which may be urged against

granting an injunction in any case, I was inclined to hesitate, which I am not, the decisions, which have been rendered in Virginia and in West Virginia, would turn the scale and confirm me in the conclusion, which I have announced. While in these states as in others the decisions have not been uniform as to who are the proper parties plaintiff in an action of the character of the one under consideration, yet they, it seems to me, all concur, that with the proper parties before the court an injunction will be awarded to prevent the collection of an illegal or unconstitutional tax by a county collector. This I regard as a legitimate interence from the Virginia and West Virginia decisions. (See *Bull et als.* v. *Read et. als.*, 13 Grat. 78; *Johnson et als* v. *Drummond, &c.*, and *Crockett et als* v. *Thomas, &c.*, 20 Grat. 419; *Kuhn* v. *Board of Education of Wellsburg et al*, 4 W. Va. 499; *White Sulphur Springs Co.* v. *Wellington Holly et al*, 4 W. Va. 507; *Osborn et al* v. *Stealey et al*, 5 W. Va. 85; *McClung* v. *Livesay*, 7 W. Va. 329; *John Doonan et al* v. *The Board of Education*, 9 W. Va. 246; *Corrothers et al* v. *Board of Education of Clinton District Monongalia County*, 16 W. Va. 527.)

I will now consider who are the proper parties plaintiffs in such a suit, and what is its proper form, and whether the law governing the requisite parties in such a suit has been violated in the cause now before us. It will be seen, from what I have already said, that when the courts of equity have permitted suits of this character to be brought, they have paid very little attention to the question, who were the plaintiffs in the suit. In many of these suits the plaintiff has been a single tax-payer; in other cases the plaintiffs were several tax-payers, sometimes a very large number; in other cases the plaintiff was a single tax-payer, who sued on behalf of himself and all other tax-payers similarly interested; and in other cases the plaintiffs were a number of tax-payers who sued on behalf of themselves and all other tax-payers similarly interested. In many such cases the court simply assumed jurisdiction, as though it was a matter of course; and when it discussed the question and formally decided, that it had jurisdiction, it took no notice of the form of the suit as to who were the parties plaintiffs, apparently assuming as a matter of course, that such suit might be brought in any of the four forms above indicated.

It is apparent, therefore, that such authorities will throw very little light on the question : Who are the proper parties plaintiff in such a suit ? And we must principally rely on the decisions in this State to determine this question.

The case of *Bull et al.* v. *Read et al.*, 13 Grat. 79, was a suit similar to the one before us. It was brought by seventeen tax-payers of Accomac county, in behalf of themselves and all other tax-payers similarly affected by the illegal tax as alleged levied by the board of commissioners of a certain magisterial district in said county, and its object was to enjoin the collection of such illegal and unconstitutional tax. The court not only sustained the jurisdiction of a court of equity in such a case but considered the question : Who were the proper parties plaintiff in such a suit ? and held them to be any number of tax-payers (in that case every inhabitant of the magisterial district) on behalf of themselves and all other tax-payers of the magisterial district similarly situated. Judge Lee in delivering the opinion of the court says p. 86 :

"The mode of suing in this case and the jurisdiction of the court have both been called in question, but, as I think, upon insufficient grounds. The act in question is one necessarily affecting all the inhabitants of the district named, who in respect of persons or property were liable to taxation under its provisions; and they were many in number but had a common interest, it was allowable according to settled practice, for some to file a bill on behalf of themselves and all other tax-payers similarly situated seeking any relief to which they might all in common be justly entitled although their individual interest might be several and distinct. Calvert on Parties 28 ; *Cockburn* v. *Thompson*, 16 Ves. R. 321; *Chancey* v. *May*, Pr. in Chy. 592; *Attorney-General* v. *Peetis*, 2 Sim. & Stu. 67, (1 Cond. Eng. Ch'y R. 348;) *Gray* v. *Chaplin*, 2 Sim. & Stu. 647 ; *Blackham* v. *The Warden and Society of Sutton Coalfield*, 1 Ch'y Case 269 ; Mit. Pl. 137 ; *Milligan* v. *Mitchell*, 2 Mylne & Craig, 14 Eng. Ch'y R. 72. And it would seem where a large number of persons are thus interested in a common subject, and acts be done to the injury of the common right, the approval of the majority will neither excuse the wrong nor take away from the other parties their remedy by suit. *Bromley* v. *Smith*, 1 Swans. 8, 2 Cond. Eng. Ch'y

R. 5 ; See also Sto. Eq. Pl., sec. 107, 112, 114, 120 ; *Taylor* v. *Salman*, 4 Mylne & Craig 134, 18 Eng. Ch. R. 133, opinion of Lord Cottenham; *Wallworth* v. *Holt*, *Id.* 616 ; 1 Dan. Ch. Pr. 287, *et seq.*"

He then proceeds to show, that a court of equity has jurisdiction in such a case, upon the ground that, though each plaintiff might have a separate suit at law, yet to avoid a multiplicity of suits a court of equity will take jurisdiction and prevent the threatened wrong by injunction. These views seem to me to be entirely sound ; and from them the conclusion would seem necessarily to follow, that the only mode, in which such a suit could be brought, would be by one or more tax-payers on behalf of himself or themselves and of all other tax-payers affected in the same manner by the illegal and unconstitutional tax complained of. Yet this decision though never disapproved either in Virginia or West Virginia has been in its spirit violated by some subsequent decisions in both States. Thus *Johnson* v. *Drummond et als.* and *Crockett* v. *Thomas et als.*, 20 Grat. 419, two cases precisely alike and involving the same identical questions, were decided together by the court of appeals. Drummond in the one case and Thomas in the other were inspectors in Accomac county appointed under a Virginia law claimed to be unconstitutional, who issued licenses to captains of vessels employed in carrying oysters taken in Virginia waters. And if the captains or the owners of any vessel engaged in this business carried it on without paying the license, the inspectors were authorized to attach the vessel and collect these license-taxes ; and for that purpose there was conferred on them the same powers as on sheriffs in the collection of taxes. Drummond seized the vessels of Johnson and certain other captains under this act ; and they brought a suit in chancery to stay the enforcement of the tax, which, they alleged, was illegal and unconstitutional. Crockett, another inspector, seized the vessels of certain other captains, who brought a suit against him of precisely the same character, the auditor of the State being made a co-defendant in each case.

The jurisdiction of the court of equity to issue injunctions asked in each case was sustained, it seems to me, erroneously according to the principles laid down in *Bull, &c.*, v. *Read*,

13 Grat. 78.  The suit according to those principles should
have been by Johnson or by Johnson and Crockett for himself
or themselves and all others engaged in this business and
subject to this illegal tax against all the inspectors and the
auditor; and the court ought not to have permitted the insti-
tution of two separate suits of exactly the same character;
for the only ground, on which a court of equity in such case
had any jurisdiction, was to avoid a multiplicity of suits and
to settle in a *single* suit the common question involved in all
of them.   It was not, however, the intention of the court to
depart from the principles laid down in this case in 13 Grat.;
for Joynes, judge, in delivering the opinion of the court says
on page 428 : "It was objected by the attorney-general, that
the appellants being the owners of several vessels by distinct
and independent titles and not having a common interest in
all the vessels could not properly unite in the same bill to en-
join the sale of all the vessels.   There is nothing in this ob-
tion.   It is fully answered by *Bull* v. *Read*, 13 Grat 78."

It seems to me, the real objection, which should have been
made by the attorney-general, was, that all the owners of
these vessels were not united in one suit as plaintiffs instead
of bringing two separate suits.   I think that objection would
have been sustained by this case in 13 Grat.   If two suits
could be brought each owner of a vessel might have brought
a separate suit.   Yet equity had jurisdiction only to prevent
a multiplicity of suits and ought not therefore to have enter-
tained a suit brought by a single owner of a vessel.   He
should have brought his suit on behalf of himself and the
owner of every other vessel engaged in this business and sub-
ject to this tax claimed to be illegal and unconstitutional.

So in *Kuhn* v. *Board of Education of Wellsburg et al*, 4 W.
Va. 499, the bill was filed by a single plaintiff to restrain the
Board of Education of Wellsburg school district in Brooke
county from collecting from the plaintiff any money assessed
and levied by said board on the property of the plaintiff for
the building fund for the support of schools in that district
under an act of the legislature deemed to be unconstitu-
tional.   The jurisdiction of a court of equity to award the in-
junction, if the act was unconstitutional, was not controverted,
and it was tacitly sustained by the court.   This it seems to

me was in violation of the principles laid down it *Bull* v. *Read*, though the principles laid down in that case were not, I suppose, intended to be repudiated, as that case is referred to by the court (p. 580) as sustaining the jurisdiction of a court of equity. This, it seems to me, was obviously an error; for the jurisdiction of the court of equity in that case is expressly based on the ground of avoiding a multiplicity of suits; and if a single tax-payer had a right to institute the suit in a court of equity, every other tax-payer in Wellsburg district could have instituted a like suit. This they could not severally do, as the only ground, which would give a court of equity jurisdiction in such cases, was the avoiding of a multiplicity of suits. It has been decided in many case, that a single plaintiff on his own behalf can not enjoin the collection of a tax, on the ground that it is illegal or unconstitutional. This is in effect decided in each of the fifteen cases cited in the beginning of this opinion as sustaining the position, that the mere illegality of the tax or its injustice or irregularity of itself gives no right to an injunction in a court of equity; and there are very many cases to the same effect in many other States; and this doctrine may be regarded as well settled, though there are many cases, where such injunctions have been awarded on suits brought by a single plaintiff apparently on his own behalf. Many such cases have been hereinbefore referred to as cited in Pomeroy's Eq. Jurisprudence. But in most of them nothing whatever is said in reference to the proper parties plaintiff; and in a number of them the suit brought by one plaintiff is stated by the court as a suit, which should be regarded as intended to settle the entire question, and just as though it had been brought by the plaintiff on behalf of himself an all other tax-payers affected by the illegal tax. In reference to these cases Pomeroy in the note to sec. 260 Vol. 1 says:

" It should be observed that all of this group of cases (when the suit was by only one tax-payer purporting to sue for himself alone) arose in states where the courts had already decided that a suit by many tax-payers as plaintiffs or by one suing on behalf of the others, would be sustained on the grounds of preventing a multiplicity of suits, and they regarded a suit by one tax-payer alone as substantially the same

in its effect, and treated it in the same manner, citing the same precedents indiscriminately in support of the one or the other form."

These cases therefore as well as the case of *Kuhn* v. *The Board of Education of Wellsburg et al.*, ought not to be regarded so much as laying down principles in conflict with the reasoning in *Bull* v. *Read*, as cases in which the court generally thoughtlessly but sometimes designedly looked only to what they regarded as the substance of the case and disregarded the form. It seems to me however clear, that no court can ever be justified in disregarding the form of a suit to the extent of holding, that a single plaintiff may bring such a suit for himself alone, and in order to sustain the jurisdiction of a court of equity hold such a suit the same as suit brought by a single tax-payer not for himself alone but for himself and all other tax-payers alike affected by such illegal tax. I know of no other instance where a suit brought by one for himself has been regarded by the court as the same as one brought by him for the use of himself and of the whole class to which he belongs. It seems to me therefore that this whole class of cases including *Kuhn* v. *Board of Education of Wellsburg et al.* must be disapproved, so far as they permit a single tax-payer to enjoin the collection of an illegal tax only because of its illegality, they being in violation of what I regard as well settled law and admittedly a loose way of instituting such suit, the proper mode being a suit by a single tax-payer in behalf of himself and all other tax-payers affected by the illegal tax. One consequence of upholding such a suit by a single tax-payer is that, if a precisely similar suit was brought by another tax-payer in the same court and even at the same time, it too would have to be sustained.

In *White Sulphur Springs Company* v. *Holly, Treasurer, et al*, 4 W. Va. 597, a single tax-payer by his bill sought to enjoin the collection of a tax alleged to be illegally levied, there being no other ground for the obtaining of the injunction stated except the illegal levying of such tax by an officer or by one claiming to be an officer, who had not been regularly elected or qualified. The court held that a court of equity could not award an injunction in such a case, as there was no averment in the bill that any irreparable damage

would be done the plaintiff, if the collection of the levy was allowed to proceed; and there was an adequate and complete remedy at law for all the wrongs, which might be done the plaintiff. The case sustains the views I have expressed. But it says nothing about the question, whether, if this suit had been brought by the plaintiff on behalf of himself and all other tax-payers, it could or could not have been sustained on the ground of avoiding a multiplicity of suits.

In the case of *Osburn et al* v. *Stealey*, 5 W. Va. 86, four plaintiffs sued on behalf of themselves only alleging, that they owned real estate in the town of Shepherdstown in Jefferson county, and that the defendants were about to illegally remove the county seat from Shepherdstown carrying away the records, &c. to their special damage under an act of the legisture, which was not passed as required by the constitution, and asked an injunction. The court entertained jurisdiction and deciding that the act was constitutional refused the injunction. According to the principles I have stated the court ought evidently to have held, that a court of equity should have refused to entertain jurisdiction of the case. The decision was right, but it ought to have been placed on different grounds from those, on which it was placed by the court.

The case of *The Trustees of Clarksburg* v. *Nathan Goff*, 5 W. Va. 498, was an injunction got by a single plaintiff on his own account to enjoin the collection of a tax alleged to be illegal. The court entertained the case but held the tax legally levied. It ought not according to the views I have expressed to have entertained jurisdiction of the case, there being no ground for the interference of a court of equity stated in the bill except the illegality of the tax; and this did not legitimately give a court of equity any jurisdiction.

After all these cases had been decided in West Virginia upon principles inconsistent with the views I have expressed, several similar cases came up before the Supreme Court of Appeals in this State; and without referring to these West Virginia cases the Court really repudiated the principles, upon which they must have been impliedly based and held according to the syllabus in one of these cases, that " In a bill, filed to restrain the collection of taxes for school purposes in a certain

township the plaintiff must aver, that he sues not only on his own behalf, but also on behalf of all others similarly situated. Such averment is essential to a complete determination of all the rights affected by the suit." See *McClung* v. *Livesay*, 7 W. Va. 329.   In that case the plaintiffs in the cause were forty-five tax-payers suing for themselves.   The Court say on page 333:

"It is a principle of practice well established, that in a case like this one now under consideration, where all the tax-payers of the township have a common interest in the subject-matter, although their individual interests may be several and distinct, the plaintiff must aver, that he files his bill in behalf of himself and all others of similar interest; and where some of the tax-payers file such a bill, they must make a similar averment.   Upon this rule of practice Judge Davis in the case of *Wood* v. *Draper*, 24 Barb. (N. Y.) 187 has collected the leading authorities, showing it to be an imperative rule and essential to a complete determination of all the rights affected by the suit.   I refer to this decision especially, because made in a case famed for the ability with which it had been argued, and because it reviews the leading authorities.   The same principle and rule of practice is laid down in the case of *Bull* v. *Read*, 13 Grat. 78.   The object of the rule is to settle the rights of all persons similarly situated and thus prevent a multiplicity of suits."

The same was determined at the same term in *John Williams' Administrator et als.* v. *John Argabrite Treasurer of Blue Sulphur Township, Greenbrier County et als.* and *Ludington* v. *McMillan*, but these cases were never reported. (See note of reporter 7 W. Va., p. 334.)

In the case of *Wood* v. *Draper et al*, 24 Barb. 195 referred to above the court say: "The rule in reference to the proper and necessary parties is that all must be made parties, who have any interest in the result; and when a great many individuals are interested, the court will often permit a few to represent the whole; but the bill should expressly state, that it was filed as well on behalf of other members as of those, who are really made complainants. (Edwards on Parties p. 40.)   One legatee may sue for his legacy without naming others interested in the same fund; but in general the plaintiff

must sue as well on his own behalf as of all others similarly situated. (*Brown* v. *Rickets,* 3 Johns. Ch'y 553 and cases there cited.) In *Chaney* v. *Ray,* (Pr. in Ch. Finch 5th Ed. 92) a bill was brought by the then treasurer and manager of the Temple Mills Brass Works in behalf of themselves and all other proprietors and partners in the first undertaking except the defendants, who were the late treasurer and managers, being about thirteen in number; and it was to call them to account for several misapplications, mismanagements and embezzlements of the corporation property in the South Sea times to the value of 50,000 pounds and upwards. The co-partnership consisted originally of but eighteen shares and those eighteen shares, in the year 1720 were split and divided into 800. The defendants demurred for that all the rest of the proprietors were not made parties, so every one had the same right to call upon them to account and then they might be harrassed and perplexed with a multiplicity of suits; but the demurrer was disallowed, because *it was in behalf of themselves and all others, the proprietors of the same undertaking,* except the defendants, and so all the rest were in effect parties. (See also *Lloyd* v. *Levering,* 6 Ves. jr. 773;) *Cockburn* v. *Thompson,* 16 Ves. 321; Cooper's Eq. Pl. 40, 41; *Good* v. *Blewell,* 13 Ves. jr., 397. In this case the bill originally did not contain the allegation that the bill was in behalf of the plaintiff and all others, but leave was given to amend by introducing a statement that the bill was in behalf of the plaintiff and all others of similar interset. (See also *Smith* v. *Swannsteadt,* 18 How. 288; *Brown* v. *Robertson,* 80 *Id.* 480.) In *Leigh* v. *Thomas,* 2 Ves. sr. 312 a demurrer to a bill, which omitted to state that it was filed on behalf of the plaintiff and the rest having similar interest was sustained. In *Baldwin* v. *Lawrence,* 2 Sim. & Stu. 18 the bill was dismissed, because it was not filed by the plaintiffs on behalf of themselves and all others equally interested with them. And in *Douglass* v. *Hasfall,* (*Id.* 184) the vice-chancellor sustained a demurrer and dismissed a bill on the ground that the bill ought to have been filed by some of them on behalf of themselves and others. This rule is also well laid down in *Ling* v. *Young,* (2 Sim. & Stu. 385.) The case of *McBride* v. *Lindsey,* (9 Hare 574–585) seems to be quite in point. Bill filed by plaintiff as a shareholder in a

company against several defendants also shareholders; the plaintiff stating there were others, and that he was ignorant of them, and the defendants had refused to disclose their names. To this bill the defendants demurred. In support of the demurrer it was alleged, that the plaintiff's case was only that of every other member of the corporation, who had sustained the same injury, and he could not sue alone. The vice-chancellor says, 'the case, therefore, is one in which the plaintiff, having a common interest in that point of view with the other parties who will be affected by the relief which he prayed, and which he has prayed for hsmself exclusively. Now I am of opinion he can not obtain such relief, in the absence of the other parties who are interested in this concern. If he has a common interest with all the other parties who are interested in the concern, he must sue on behalf of himself and all those other partners.' Demurrer allowed.

"So also *Whitney* v. *Mayo*, ( 15 Ill. Rep. 251.) The court held in that case that 'the general rule in equity is, that all persons materially interested in the subject-matter of the suit, however numerous, must be made parties, plaintiffs or defendants. The case before us falls within the exception to the general rule, on account of number, and part being unknown. But the bill has not been framed to meet the exception. It should have been filed for and on behalf of all the other communicant members,' and the decree dismissing the bill was affirmed.

"The only case, which I have been able to find, apparently adverse to this uniform current of decisions both in this country and in England and the established practice there and in our courts, is that of *Dodge* v. *Woolsey*, (18 How. 321.) In that case a bill was filed by a single stockholder of a bank, to restrain by an injunction a tax-collector of the State of Ohio from collecting a tax, upon the ground that the law imposing it was unconstitutional and void. The circuit court of the United States granted the injunction, and the Supreme Court affirmed the order. The precise point now under consideration does not seem to have arisen in that case, and it may perhaps be reconciled with the authorities before referred to. It would seem at first blush to conflict

with them, but if it does, I am satisfied that the weight of
authority is entirely with the proposition, that a plaintiff, who
seeks the aid of a court of equity in a case like the present,
must aver that he files his complaint not only in his own be-
half but for all others similarly situated. Such an aver-
ment is essential to a complete determination of all the
rights affected by the suit.   As has been well observed, with-
out it the defendants might be subjected to a suit by every
tax-payer in the city of New York, while on a complaint
with the necessary averments a determination of the case
would bind the plaintiff and all others having like rights and
interest.   Such at least has been the uniform averments in
all similar complaints in like cases, entertained by this Court,
and I do not feel warranted in this case, in departing from
well-established principles and authority.

"In stating the conclusion to which I have arrived, I adopt
the language of Lord Elden in *Davis* v. *Fish*, reported in the
appendix to Warren on Life Insurance, p. 128 : 'It must not
be understood, from what I am about to say, that I give any
opinion, whether the plaintiffs might or might not put such a
case on the record as would entitle them to a decree for the
relief they seek.   The question is whether on an interlocu-
tory motion I can do what is asked.   If I could not grant
the decree as asked I can not grant the injunction.'   *   *   *

"The motion for an injunction is therefore denied, and the
order for a preliminary injunction vacated."

I concur in the reasoning generally contained in this opin-
ion and in the conclusion reached.   The case of *Doonan et
al.* v. *The Board of Education*, 9 W. Va. 246, was originally
decided at the July term, 1879, and it followed the decision
of *McClung* v. *Livesay*, 7 W. Va. 329, and decided that when
a part of the tax-payers of a school district file a bill in chan-
cery, to enjoin the collection of illegal taxes, they should
file the bill in behalf of themselves and all others similarly
situated, as such an averment is essential to a complete de-
termination of all the rights affected by the suit.   The bill
was dismissed, because it was not brought by the plaintiffs
on behalf of themselves and all other tax-payers equally
affected by the illegal tax.   But Judge Hoffman dissented
from this action of the Court and was of opinion, that leave

should be given the plaintiffs to amend the bill by making in this manner all other tax-payers parties. The case was reheard and decided at the June term, 1876. See 9 W. Va. 246. The court without expressing any opinion except that which had been announced in 1874, reached the same conclusion. Nothing was said in the opinion in reference to the plaintiffs being allowed to amend their bill by alleging that it was brought on behalf of themselves and all other tax-payers similarly affected by the illegal taxes complained of. Nor does the syllabus say any thing on this point. I can see no good reason, why in accord with Judge Hoffman's views the plaintiffs should not have been allowed to amend their bill even by the order of the Court of Appeals. This is constantly done, when the bill shows a good case but the proper defendants are not before the Court; and I see no reason why it should not be done, when the plaintiffs show a good case but have simply failed to allege in the bill, as in such case they must, that they sue on behalf of themselves and all others similarly situated. The opinion in the case of *Wood* v. *Draper et al.*, on which these West Virginia cases are expressly based, states distinctly that the plaintiffs are allowed to amend their bill, "if it did not originally contain the allegation, that the bill was in behalf of the plaintiffs and all others, by introducing the statement that the bill was in behalf of the plaintiffs and all others of similar interest." And this seems to me obviously right. Why it was not allowed in the case of *Doonan et al* v. *The Board of Education*, does not appear, nothing being said on the subject in the report of the case.

In the case of *Douglass and McKinney* v. *The Town of Harrisville*, decided a few days prior to this case, (see 9 W. Va. 162,) it was decided that a bill of injunction will not lie to restrain the collection of a tax-assessment or a tax made or levied by the council of an incorporated town on the sole ground that the tax or assessment is illegal; there must exist in addition special circumstances bringing the case under some recognized head of equity-jurisdiction, such as that the enforcement of the tax would lead to a multiplicity of suits or produce irreparable injury or, when the property is real estate, throw a cloud upon the title of the complainant and the like.

67

In that case the suit was by a single tax-payer for himself. President Haymond on page 168 says: "If the assessment is illegal, it and all the proceedings under it are illegal and null, and the town as well as the officer is responsible to the plaintiff for damages in a suit at law. The plaintiff had a complete and adequate remedy at law for redress and relief without invoking the aid of a court of equity by the exercise of a process of injunction, and having such remedy he does not present a proper case for the exercise of equity jurisdiction." This case is in conflict really with *Kuhn* v. *The Board of Education*, 4 W. Va. 490 and *The Trustees of Clarksburg* v. *Goff*, 5 W. Va. 498, and in reference to these cases President Haymond says, (page 168): "The question of jurisdiction was not raised or made in them and was not decided in this Court, just as had been the case in a number of other cases where jurisdiction had been taken, as stated in the opinion of the court in *Dews* v. *City of Chicago*, 11 Wall. 108. In the case of *Tappin, Collector* v. *Merchants' National Bank*, 19 Wall. 490, I presume special cause was shown for the interposition of a court of equity, as the question of jurisdiction was not raised or discussed." This case as well as *Doonan* v. *Board of Education*, 9 W. Va. 246, were followed in *Corrothers et al.* v. *The Board of Education, &c.*, 16 W. Va. 527. It seems to me that these decisions must be regarded as settling the law on this subject in West Virginia.

I have thought it proper to review the various authorities bearing on these subjects, and to consider them maturely, not only because there has been a very great diversity of opinion on them in the different States of the Union, but also because there have been really no consistent holdings of this Court, and the questions involved have never been fully discussed. It is true our most recent decisions have in my judgment reached correct conclusions; but as our decisions have fluctuated, I have thought it important, in order to prevent such fluctuation in future, to investigate the questions involved in this cause thoroughly and settle them finally.

It remains now to apply the law as stated above to the case before us. The object of the bill in this cause was to enjoin the enforcement in Grant district in Grant county a dog-tax, which the county court of Grant county had levied on all the

owners of dogs in said county under and in pursuance of ch. 23 of the Acts of 1881, and to restrain said county court of Grant county from appropriating any money, which had been or might be collected from said tax on dogs, to the payment of the losses of private individuals from the destruction of sheep by dogs, and further to prohibit the sheriff of Grant county from paying out money, that may come into his hands from said dog-tax, for said purpose under the provisions of said act of the legislature, the ground on which the injunction was asked being, that this act was unconstitutional, null and void, and that therefore the county court of Grant had no authority to assess the tax; and especially that sections five and six of said act, which authorized the payment by the sheriff out of the fund raised by this dog-tax to private individuals in said county for losses sustained by the destruction of their sheep severally by dogs, was unconstitutional and void.

Now it is obvious from the law, as I have stated it, that a court of equity would have no jurisdiction to award such an injunction, merely because the tax was illegal, and the act, under which the tax was assessed, was unconstitutional, null and void. Nor would a court of equity have any jurisdiction to award any injunction to prohibit the appropriation of the moneys arising from this tax to the payment of losses sustained by individuals by the destruction of their sheep, merely because the act authorizing such appropriation was unconstitutional, null and void. It is equally obvious, that if a bill was properly framed, and the suit brought by proper plaintiffs against proper defendants, and this ch. 23 of the Acts of 1881 was unconstitutional, as claimed, that an injunction ought to be awarded not only to prevent the collection of the tax but also to prevent the appropriation of the moneys arising from it to the payment of losses sustained by individuals by the destruction of sheep by dogs. Such a bill when properly framed would ask this interposition of a court of equity, not merely because the tax was illegal, and this act unconstitutional, but for the additional reason that this interposition of a court of equity would avoid a multiplicity of suits, as each dog-owner and therefore tax-payer would have, unless the court of equity interposed by such an

injunction, to institute a separate suit to remedy the wrong he would suffer.

Who then are the proper parties plaintiffs and defendants in such a bill? The act complained of was the assessment illegally, as was claimed, of a dog-tax on every owner of a dog in Grant county by the county court of Grant. Every owner of a dog in Grant county, who was subject to this tax alleged to be illegal, was equally interested in having the action of the county court of Grant in assessing this tax declared illegal and void and in enjoining the collection of this illegal tax. The suit therefore should according to the principles, I have laid down, have been brought by one or more owners of dogs resident in Grant county and subject to this dog-tax on behalf of himself or themselves and all the other owners of dogs resident in Grant county and subject to this tax. It is true that this alleged illegal tax was to be collected by the several constables in the several disricts of Grant county, each constable confining his collections to the owners of dogs taxed, who resided in his district; and it is also true, as I have stated, that the complainants in such a bill must have a common cause of action, one in which they together represent one entire claim or interest. The grievance complained of must be identical in all respects, and all the complainants must stand upon the same footing. But does the fact, that this dog-tax was to be collected by one constable in one district in Grant county and by another constable in another district in Grant county cause the owners of dogs living in different districts in Grant county to have separate and distinct interests? Are not the grievances complained of identical in all respects, whether the complainants live in one or in several districts in Grant county? Do not all the complainants though living in different districts stand upon the same footing? Would it have been possible, if the dog-owners subject to this tax living in Grant county in different districts had been united in one suit, to dismiss the bill as to the residents in one district and to sustain it as to residents in any other district? This is the true criterion to be applied to ascertain whether all the dog-owners subject to this tax in Grant county should have been complainants jointly.

In the case of *Kerr et al* v. *City of Lansing*, 17 Mich. 34,

this was the criterion, which the court applied, as appears from the opinion of the court in that case heretofore quoted. But in this case, if the suit had been brought on behalf of all dog-owners resident in Grant county subject to this dog-tax, it would not have been possible to decide in favor of one complainant and against another. Their grievance was common and joint, that is, the entorcement against them severally of an illegal tax. It was to each of them a totally immaterial matter, what constable had the collection of the tax. If it were a legal tax, then the constable in each several district had a right to collect, and if illegal, no one of the constables had any right to collect it. I can not therefore see any reason, why the suit could not and should not be brought on behalf of all the dog-owners in Grant county, who were subject to this alleged illegal tax. And if it could be so brought, on the principles of law, which I have laid down, it could be brought in no other manner. The suit should have been brought therefore by the plaintiffs for themselves and all other owners of dogs subject to the tax complained of, who were residents in Grant county instead of by the plaintiffs on behalf of themselves and all other tax-payers of Grant district in Grant county.

It is obvious, if I am right as to the proper parties plaintiffs in such a bill, that all the constables in Grant county, in whose hands were any portion of these taxes for collection, were proper and necessary parties defendants instead of merely the constables in Grant district in Grant county, as was in fact the case in the bill in the cause before us.

For these reasons I am of opinion, that the bill on its face in this case was fatally defective, and the injunction prayed for ought not to have been awarded, and that the decree of April 3, 1883, must be reversed, and the bill dismissed at the costs of the plaintiffs below, and that the appellant, the county of Grant, recover of the appellees, Joseph V. Williams, George F. Cunningham and Edward Williams, its costs in this Court expended.

If the bill could on the facts appearing in the record be amended, it would not be dismissed; but the decree of the circuit court would be reversed, and the cause remanded to the circuit court with leave to amend the bill within such

reasonable time as the circuit court should fix. But this is not done; for though when this bill was filed the plaintiffs by suing on behalf of themselves and all other owners of dogs subject to this dog-tax residing in Grant county and making the proper defendants could, it is presumed have filed a good bill, as it is to be presumed these owners of dogs then occupied the same position and had the same interest, the tax in none of the districts having been, I presume, then collected : though it has been probably collected and appropriated before this time, but even if the whole of the tax in all of the districts of Grant county were still uncollected, this bill could not be amended; for if a proper bill was filed now, it could not be regarded as an amended bill, as it would make an entirely different case from that stated in the original; the parties both plaintiffs and defendants would be different, and also the main object of the bills, this suit being to stay the collection of this dog-tax in Grant district in Grant county only, while the main object of the other would be to stay the collection of the dog-tax throughout Grant county.

REVERSED.    DISMISSED.