# Charleston.

## ADAM KUHN *vs.* THE BOARD OF EDUCATION OF WELLSBURG AND OTHERS.

### January Term, 1871.

1. The act of the legislature of West Virginia, entitled "An act to establish the school district of Wellsburg, in the county of Brooke, passed July 11th, 1868," is not unconstitutional; and the taxes and levies assessed by authority of the board of education of said school district, in the year 1869, are legal, and should be collected.

2. The legislature has the exclusive power to create independent school districts, without the assent of the citizens residing therein, and to authorize by law the election of a board of education for such districts by the qualified voters resident therein, and to give such board power to make the annual levies for buildings and the support of schools therein.

3. Injunction was the proper remedy in this case to determine the question/ the assessment of taxes, where it was claimed in the bill that the act c/ ating the school district of Wellsburg, under which the assessment w. made, is unconstitutional.

This was an application to the circuit court of Brooke county, for an order of injunction to restrain the board of education of Wellsburg school district, in said county, from collecting from the plaintiff any moneys assessed and levied by said board on the property of the plaintiff, for the building fund and for the support of schools within that district. The plaintiff, in his bill of injunction alleged that, he was a resident of Buffalo township, in that county, and the owner of real and personal property therein. That his real estate, consisting of 67 acres of land, was assessed on the assessor's books of the county, at 3,658 dollars and 26 cents, and that prior to the passage of the act of the legislature of West Virginia, of the 11th of July, 1868, entitled

" An act to establish the school district of Wellsburg, in the county of Brooke," the county was divided into three townships, to wit: Wellsburg, Cross Creek, snd .Buffalo; and that prior to the passage of the last named act, the township of Buffalo had erected and established commodious and suitable school houses in all the school districts of that township, under the general free school law of the State, and that there had been, before that time, erected in the school district of the township of Buffalo in which the real estate of the plaintiff was situated, a commodious and well furnished school house, the cost of the erection and furnishing of which, had been, prior to the passage of the last named act almost entirely paid by levies assessed upon the property of said township, of which the plaintiff had to that time paid all the levies assessed upon his property for that purpose.   The plaintiff further charged that Wellsburg township (which lies adjacent to Buffalo township) or its board of education had, sometime in the year 1867 or 1868, began the erection of a large and costly school building in Wellsburg township, and had about completed the same in the year 1869; that the cost of the same, with the grounds and appurtenances, was about 20,000 dollars, and that up to the 11th of July, 1868, but about 5,000 dollars of the same had been paid; and that there then remained unpaid thereon the sum of 15,000 dollars, bearing interest, for the payment of which the said Wellsburg township had issued its bonds or other certificates of indebtedness, and that said building was erected without the knowledge and consent of the plaintiff, and without the knowledge and consent of Buffalo township or of its people.   That by the act of the legislature of the 11th of July, 1868, an area of several square miles of the townships of Buffalo and Cross Creek were annexed to the township of Wellsburg for school purposes, which embrace among others the lands of the plaintiff in the township of Buffalo.   That said act was also passed without the knowledge or consent of the plaintiff, and without the knowledge or consent of the people of the township

of Buffalo, or of the board of supervisors of the county of Brooke. That under said act an election was held in said newly formed school district, on the first Monday in May, 1869, and that J. M. Cooper, George Freshwater and James Hervey, claimed to have been elected to, and assumed the office and title of the "board of education" of Wellsburg; and that in May, 1869, they made and levied a tax on all the real and personal estate in the so-called school district, (including therein the real and personal property of the plaintiff,) to wit: a tax of fifty cents on the one hundred dollars valuation of all the property for the building fund, and fifty cents on the one hundred dollars valuation of all the property for the support of schools, and directed their treasurer to collect the same. The plaintiff further charged that the act aforesaid, creating the school district of Wellsburg, was unconstitutional, null and void; that the levy, assessment and collection of said tax for said school district of Wellsburg was unconstitutional, null and void; that the election of the so-called board of education was unconstitutional, null and void; and that it would be unjust, inequitable, and in violation of the constitution of the State of West Virginia, to make the plaintiff liable for any portion of the aforesaid levies and taxes of the so-called school district. In August, 1869, the plaintiff gave notice to the defendants, the board of education of Wellsburg, that the bill would be filed at the September rules of the circuit court of Brooke county, 1869, and that on the first day of the October term following he would move the court for an order of injunction restraining them and the township collector from collecting any of the taxes levied and assessed against him. Process was issued to September rules, 1869, and the defendants answered. The notice to the defendants was presented to the court at its September term, 1869, and the motion of the plaintiff ordered to be docketed. At a subsequent day of the September term, 1869, the cause was argued, and at the December term, 1869, the petition of the plaintiff for an injunction was overruled, and the bill dismissed at the

plaintiff's costs. From said order of the circuit court the plaintiff appealed to this court.

Hon. T. Melvin, judge of the circuit court of Brooke county, presided at the hearing of the cause.

*G. W. Caldwell, Joseph H. Pendleton and George A. Davenport* for the appellant.

For the appellant it is claimed, 1st, that the *will* of the people, as declared in the constitution, is the supreme law, and that any act of the legislature that materially conflicts with the supreme law, is void; that the act of the legislature, complained of in this cause, was not the rightful exercise of the power of the legislature, according to the will and appointment of the citizens of the State in their constitution. Const. W. Va., Art. 1, sec. 3.

2. That said act conflicts with the constitution in withdrawing from the direct action of the voters assembled in their township meetings, a business relating to their township, and required and authorized by law, viz: the raising of school money, and vests that power in a board composed of three persons, elected for three years, when the constitution says expressly, it shall be done by the voters of each township personally, assembled in special or general township meeting, and by the respective voters of each township when assembled. Const., Art. 7, sec. 2; Art. 10, sec. 2.

3. The said act is unconstitutional, because it disregards township boundaries, and creates a school district of one entire township, and portions of two other townships, and directs how the money for the support of the school shall be raised, irrespective of the townships concerned, and without the authority of the people of said townships or parts of said townships. Cons., Art. 10, sec. 2.

4. The said act is in direct conflict with the constitution in the mode it prescribes for choosing the school officers in said school district. Const., Art. 10, sec. 3: " Provision may be made by law for the election in the several town-

ships by the voters thereof of such officers," &c.   This language did not warrant the legislature to direct elections of school officers by detached portions of townships, regardless of township lines.   See also Art. 7, secs. 2 and 4.   And the 4th section of the said act is in violation of the constitution, in providing for the election of school officers to be held by the appointees of the town council of Wellsburg; the constitution requiring the supervisor, or in his absence, a voter chosen by those present, to preside at township elections, and the clerk of the township to be the clerk of the election.   Const., Art. 7, sec. 2.   Section four of said act also appoints the place of holding the election, in violation of Art. 7, sec. 4; the supervisors having the sole right to appoint the place of holding the elections, and to be the judges of the election, qualification and returns of all county and township officers.

5.   The said act is unconstitutional because, by the second section of said act, it expressly provides that where the word *township* occurs in the school law, it shall be construed to mean school district.   Constitution, Art. 10, sec. 2 and 3, is a part of the school law, wherein the word township occurs as the same word also occurs in Art. 7, sec. 13; thus changing the constitutional meaning of the word township. This act also changes the boundaries of the townships concerned, in violation of the 13th section of Article 7 of the constitution.   While the constitution provides the board of supervisors may alter the bounds of a township, or erect new townships with the consent of a majority of the voters of each township interested, assembled in stated township meetings, &c.

6.   Said act is unconstitutional because, by said act, (see secs. 6 and 7), the clerk and treasurer of Wellsburg township are made the clerk and treasurer of the said school district, and are given a jurisdiction of parts of other townships, the voters of which have no voice in the election of said officers, that is to say, the voters of Cross Creek and Buffalo townships, included in said school district, cannot

vote for the clerk and treasurer of Wellsburg township, while, at the same time, said voters may vote in their respective townships for the clerk and treasurer thereof, which is in violation of the constitution, Art. 3, sec. 1. And besides, the said act is special, and not a general law, which the constitution authorizes as the only mode touching this subject. See constitution, Art. 10, sec. 2; Art. 11, sec. 5; Art. 3, sec. 8.

7. Nor can the said act be construed to create what the law of Virginia regarded as a "Chartered Municipal Corporation," within the meaning of Article 7, section 14, of the constitution of West Virginia. The political entity sought to be created by the said act, lacks many of the essential attributes necessary to form a chartered municipal corporation, as the same was understood in the legislature of Virginia at the time the constitution of West Virginia was framed. Cities and towns were created in the old State by complete regular charters, conferring on these bodies all the powers, attributes and duties pertaining to public municipal corporations as they existed at the common law. See Code 1860, chapter 56, sec. 1; also chapter 54, sec. 24. What are known as quasi corporations in the New England and other northern States, were unknown in Virginia in 1861 and 1863, and were not, therefore, in the contemplation of the convention who framed the constitution of West Virginia, for which reason it is submitted that said act cannot come within the exception in section 14, Art. 7, constitution of West Virginia.

Another cogent reason showing the convention which framed the constitution could not have so contemplated, is the fact, that the contrivance sought to be established by said act, would enable the legislature to break down the barriers in the constitution, designed to prevent special legislation, efface the township system so deeply inscribed in the constitution, by absorbing all their powers, not only as to schools, but to roads, the keeping of the poor, elections, and other matters, and overspread the State with quasi

corporations, conflicting and interfering with each other, and with corporations proper, and taking from the people rights which they reserved in their constitution for their own exercise touching township and local affairs, and this right they have especially reserved in respect to their township lines for school purposes.

The constitution has invested the exclusive power of electing school officers and raising school funds in the voters of each township, to be exercised by them in person, when assembled in general or special township meetings, and therefore no change can be made in this respect, but by altering the boundaries of the townships in the manner provided in section 13, Article 7, of the constitution. And again, if the taxes levied by the people in their respective townships for school purposes be the exercise of a constitutional privilege, why should a portion of the citizens living within a certain district, be denied that privilege, as they are by the operation of said act?

And it is further submitted that if the legislature has no right to form a school district of one entire township and part of two other townships, and to authorize the election in such school district, (see said act, sec. 4), to be held by the appointees of the town council of Wellsburg, that then, the legislature would have the right to form into one school district all the townships of any county of the State, or to form into one school district a part of every township of any county, though said parts of townships were not contiguous, but remote from each other; and carrying out said principle, the legislature might consolidate the entire State into one school district, and direct the appointees of the town council of Wellsburg to hold the election for school officers within such district.

Therefore, it is claimed by the appellant that the decree of the court below, in said cause, should be reversed, and that said act should, by the honorable court, be adjudged and decreed unconstitutional, null and void.

*Stanton & Allison* for the appellees.

The defendant was organized under the act of July 11th, 1868. Acts of extra session of 1868, p. 17. It is expressly made a corporation, (as are all other school districts by the general law), and is a corporation *de facto*, if not *de jure*.

It is a municipal corporation, within the meaning of the 14th section of Article 7, of the constitution, which cover all public corporations other than those spoken of in t' previous sections of the same article, to wit: counties townships. The latter, if corporations at all, come witmu the general definition of a municipal corporation, but are not such within the meaning of section 14, Article 7, but all other public corporations are.

We refer to the following authorities upon this point. 1 Bouvier's L. Dic., 318 and 319, see 3 to 7; Angel & Ames on Corp., sec. 23, 24, 14; Cooley's Con. Lim., p. 189; *Mc-Kim* v. *Oden,* 3 Bland Chy, [Md.,] 417 and 418; *Willimantic School Society* v. *The First School in Windham,* 14 Conn., 468; *Granby* v. *Thurston,* 23 Conn., 416; *Gilman* v. *Bassct,* 33 Conn., 298; *Whitmore* v. *Hogan,* 22 Maine, 564; *People ex rel Wilson* v. *Solomon,* A. L. R., Oct., 1870, p. 604; 4 Wis., 79; 1 Dutcher, 177; 35 N. H., 477; 32 Pa. State Rep., 194; 23 Iowa, 408.

Trustees of school districts are public officers. 1 Dutcher 177; 35 N. H., 477; 32 Pa. St. Rep., 194.

The legislature has entire control of public corporations of a municipal character where not forbidden by the constitution, and they are created by the mere act of incorporation, whether the inhabitants are pleased or displeased, and without their acceptance. *Berlin* v. *Gorham,* 34 N. H., 266; *Gorham* v. *Springfield,* 21 Maine, 58; *McKim* v. *Oden,* 3 Bland's Chy., 417–18; 1 Tucker's Com., book 1., p. 162 to 165; 1 Call, 161, 164; 9 Cranch, 62.

Injunction is not the proper remedy, but should be infor-formation in nature of *quo warranto,* (or perhaps a writ of prohibition). *Hodges* v. *N. E. Screw Co.,* 3 R. I., 1; Redf. on Railways, p. 9, sec. 9, p. 18, sec. 4, p. 457, 472; Angel &

COURT OF APPEALS OF WEST VIRGINIA.          507

Jan'y Term,      Kuhn *vs.* Board of Education of Wellsburg *et al.*      1871.

Ames on Corp., sec. 731 to 735, 820, 312; Wilcox on Corp., 14 Law Lib., 247; 2 Tucker's Com., 201; 15 Gratt., 179; Code of West Va., ch. 7, sec. 15, ch. 13, sec. 18; *Attorney General* v. *Utica Ins. Co.*, 2 Johns. Chy. Rep., 375; 3 Leigh, 1; 11 Paige, 118; 15 Johns., 378; 5 N. H., 367.

The officers of the district cannot decide upon the constitutionality of the law. Code of W. Va., ch. 13, sec. 18; Acts of 1866, p. 25.

Law to be held constitutional unless clearly otherwise. The legislature has all legislative power not prohibited. *Sharpe* v. *Robinson*, 5 Gratt., 642; *Com.* v. *Drewry*, 15 Gratt., 1; *Exparte Hunter*, 2 W. Va. Rep., 160, 161; *Exparte Stratton*, 1 West Va. Reports, 306; *Case of County Levy*, 5 Call, 139, 141.

We particularly refer to Drewry's case, 15 Gratt., 1, 5, and to Hunter's case, 2 W. Va. R., 160, where the acts, we think, were of more doubtful validity than the one now before the court, though properly held constitutional.

Legislative construction strongly in favor of the power, and many other similar districts involved. See the following similar acts: Free School law of Dec. 10th, 1863; Acts of 1863, chapter. 137, sec. 1, as to Wheeling district. Also Acts of 1865, p. 82; 1867, p. 64; and 1868, p. 107; [4 townships and parts of 2 others]. Clarksburg and parts of adjoining districts, Acts of 1867, p. 101, and 1868, p. 45; Morgantown, &c., Acts of 1868, p. 46; Barboursville, &c., Acts of 1867, p. 23; Moundsville, &c., Acts of 1867, p. 23; Weston, &c., Acts of 1868, p. 70, 1869, p. 106; Leatherwood, &c., Acts of 1869, p. 9; Brandonville, &c., Acts of 1868, p. 22; Fairmont, &c., Acts of 1869, p. 9; Phillippi, &c., Acts of 1869, p. 105. Ratified by the Code of West Virginia, ch. 45, sec. 76, p. 312, and sec. 37, latter part, and sec. 28.

There is nothing in the complaint that the act was passed without plaintiff's consent or the consent of his township. *Harrison justices* v. *Holland*, 3 Gratt., 247; *Wade et al.* v. *City of Richmond*, 18 Gratt., 583, 601, 616, 620; Cooley's Con. Lim., 193, and note 3; *Cheaney* v. *Hooser*, 9 B. Mon., 330;

*Gooden* v. *Crump*, 8 Leigh, 120, 128, 129, 154; *Powers* v. *Com. of Wood Co.*, 8 Ohio State Rep., 289.

Plaintiff is estopped, because of his vote for the officers, who are but his agents, in the performance of the duties for which plaintiff and others elected them as their agents. See Angel & Ames, secs. 282–3; 8 Wheat., 357.

As to what constitutional provision will be deemed directory only, and the effect of repeated legislative recognitions, see *Rumsey* v. *The People*, 19 N. Y., 41.

The direction to make general laws does not prohibit the power to make local regulations having the force of law in limited localities, committed to other bodies, &c.    *Clark* v. *City of Rochester*, 28 N. Y., 605.

The act is not in conflict with either of the provisions of the constitution referred to by the plaintiff. As to Art. 7: If there could have been a doubt under the previous sections, it is removed by the 14th section, saving the power as to municipal corporations. So with Art. 10. If there would have been a doubt under sections 2 and 3, it is removed by section 4.

MOORE, J. This case involves two questions. 1st. The jurisdiction of a court of equity to interpose by injunction in such cases. 2d. The constitutionality of the act entitled "an act to establish the school district of Wellsburg, in the county of Brooke," passed July 11th, 1868, by the legislature of this State. Acts ex. ses., 1868, p. 17. That a court of equity has jurisdiction in such cases, is fully sustained by authority. *Bull et al.* v. *Read et al.*, 13 Gratt., 87. The answer to the second question is made equally definite by the same authority. We are not, however, sent adrift for authority to establish the constitutionality of said act. The constitution itself, Art. X, section 2, declares, "The legislature shall provide, as soon as practicable, for the establishment of a thorough and efficient system of free schools." The establishment of such schools is, therefore, not merely permissive, but obligatory, on the legislature. The system

"provided for" by them is required to be "thorough and efficient." Who is judge of the thoroughness and efficiency? Certainly, the legislature. When the people, through the constitution, delegated that power to the legislature, they made the legislature sole judge of the kind or kinds of free schools that should be established and supported. It was not left to the caprice of an individual, or any number of persons that might be influenced by personal motives or local prejudice, but was wisely confided to the wisdom of the united representatives of the people who, coming from all sections of the State, could best devise a system "thorough and efficient." Hence, we find, in the same section of the constitution, a power given to the legislature to "provide for the support of such schools by appropriating thereto the interest of the invested school fund; the net proceeds of all forfeitures, confiscations, and fines accruing to this State under the laws thereof; and by general taxation on persons and property, or otherwise." Const., Art. X, sec. 2, clause 2. From this clause it is plain, the people intended that the "thoroughness" and "efficiency" of the system of free schools, adopted by the legislature, should in no wise be prejudiced by the want of ample means. They make it obligatory upon the legislature to provide for the support of such schools, not only "by appropriating thereto the interest of the invested school fund," &c., but also by "general taxation on persons and property, or otherwise," thus placing in the hands of the legislature, for that purpose, plenary, if not absolute, power. The third clause of the same section declares that the legislature "shall also provide for raising in each township, by the authority of the people thereof, such a proportion of the amount required for the support of free schools therein, as shall be prescribed by general laws."

In conformity with the provisions of the said tenth article of the constitution, the legislature in 1863 established a general system of free schools. Chap. 137, Acts 1863. The first section of said general act declared that "each and

every organized township within the several counties of this State, or which may hereafter be organized within the same, is hereby constituted a school district to be confided to the care and management of a board of education as hereinafter constituted; but the city of Wheeling, with parts of townships connected therewith, shall constitute but one district." From this, it appears, the system established was one of *districts*, whether embraced by the boundaries of one township, or embracing within its own boundaries parts of several townships. To render the system efficient, it was necessary to establish a head or governing authority over each district; hence, for that purpose they provided, in the second section of said act for the election of three commissioners by the voters of the several townships, who, together with the clerk of the township (and their successors in office) were by the fourth section of said act constituted "a body corporate in law under the name and style of The Board of Education of the Township of ———."

By the general act of February, 1866, the district system was retained by authorizing the division of every township "into a suitable number of school districts," (Acts 1866, p. 54, ch. 74, sec. 1) governed by an incorporated board of education. *Idem*, secs. 2, 3, 4. The amendatory act of 1867, (Acts 1869, p. 113, ch. 98,) and the Code of 1868, p. 290, ch. 45, secs. 9, 10, retain the system of districts; thus showing that the wisdom of the successive legislatures of the State approve of that system, as the most thorough and efficient, for the free education of the youth.

What are called "independent school districts," as the one under consideration, although created by special acts, have, from their formation to the present, been specially recognized in the general acts; and notwithstanding the designation of "independent," they nevertheless constitute a part of the general system, sanctioned by the legislature as the most efficient for a particular locality.

That the legislature had the power to establish the school district of Wellsburg, in the manner they have by said act

of July 11th, 1868, seems evident from the authority vested in them by the said second section, tenth Article of the constitution. But if their authority under the said second section was questionable, they certainly had ample power under the fourth section of said tenth Article, viz: "The legislature shall foster and encourage moral, intellectual, scientific, and agricultural improvement; they shall, whenever it may be practicable, make suitable provisions for the blind, mute and insane, *and for the organization of such institutions of learning as the best interests of general education in the State may demand."* Con., Art. X, sec. 4. It stands in reason that the people, in conferring on the legislature so great a prerogative, intended that it should be the judge of what was necessary and proper "for the organization of such in-institutions of learning as the best interests of general education in the State may demand," and have all powers, consistent with the principles of right and justice, as recognized and protected by the constitution, to provide the means for their support. The district schools, whether created by general or special acts, are institutions of learning, under the fostering care of the legislature. It is not our province to criticise the system adopted for the Wellsburg district, nor to judge of its efficiency; all we are called upon to do, is to ascertain whether the act creating it is in violation of the constitution or not? We think it is not. It does not alter the boundary lines of townships, as argued, it simply creates an institution of learning, having jurisdiction for school purposes only over a definite territory embracing one township and parts of two others, but not conflicting with said townships, in their municipal or police powers and rights. The township is a corporation for certain purposes; the district is instituted for as specific, though different purpose, and in that respect, and to that extent, they are distinct and independent corporations.

The mode prescribed by said act for raising the money for the support of the schools within said district, is not unconstitutional, because the money is levied for the "board

of education," elected by the voters, who are thus constituted the authority of the people in the districts for that purpose.

The counsel have raised many points in their arguments, indicating that said act violated the constitution, but notwithstanding the ingenious argument, coming with acknowledged force from able jurists, there does not appear that direct violation of the constitution, in the provisions designated in the argument, as would justify this court in declaring that the legislature had transcended its powers.    In fact several of the points argued do not fairly arise from the record, and should not be considered.

From the foregoing view of the constitutional provision, and upon the principles decided in *Godden* v. *Cramp, &c.*, 8 Leigh, 120; *Bull* v. *Read, &c.*, 13 Gratt., 87; *Wade, &c., and Thomas, &c.* v. *City of Richmond*, 18 Gratt., 583; in which cases the leading authorities are fully discussed, and therefore not necessary to be reviewed in this case, we are led to the conclusion that the said act is constitutional; that the taxes and levies complained of by the plaintiff are legal, and should be collected; and that the assent of the plaintiff was not essential to the formation of said school district; that the legislature has the exclusive power to create such districts, even without the assent of the citizens therein, and did not exceed their authority in that respect when, by said act, they created a board of education consisting of three commissioners, who should "be elected by the qualified voters resident" in said district, and gave that board power to make the annual levies for building, school and expense funds.    The consequences flowing from this creation of the legislative will, grievous though they may be to the plaintiff, can have redress only in the legislative will and discretion, and cannot be relieved by judicial supervision, unless the corporate authorities of this district exceed their corporate powers, or, the legislative will springs beyond the restricting limits of the constitutions, Federal or State.    If the legislative will, in the creation of the district,

operate harshly upon any citizen therein, the fault is in the constitution, and cannot be remedied by the judiciary; the appeal for redress must be either to legislative discretion, or to the people, from whom all such power originates, and who alone can create organic law.

I am thus led to the opinion, that the circuit court properly refused the injunction prayed for in this cause, and was equally right in dismissing the bill; and that the order complained of should be affirmed, with costs to the appellee.

The other Judges concurred.

ORDER AFFIRMED.