# CHARLESTON.

## POWELL *v.* CITY OF PARKERSBURG.

Submitted June 21, 1886.—Decided October 30, 1886.

By an act of the legislature passed on the 5th of November, 1863, the corporate limits of Parkersburg, a city containing less than ten thousand inhabitants, were extended so as to include a portion of territory, not theretofore within its limits, and its charter was thereby so amended, that no part of the land so annexed used exclusively for grazing, gardening, farming or other agricultural purposes, should be assessed with or liable for any city taxes, unless and until some part or parcel of said land had been, or should be laid off into streets and lots, and such lots sold, or offered for sale ; and that no building erected on any part of the land so annexed, should be taxed by the city, unless the same fronts on some street or alley by which the same is accessible from the bounds of the city as it existed on the 5th of November 1863 : and that when a building should be erected thereon, so as to become liable to be assessed with city-taxes, the same and not exceeding one acre of land, used in connection therewith, might be taxed at a rate not exceeding *one half the rate*, at the same time charged against similar property within the then existing limits of the city. The city disregarded the limitations imposed by the act of November 5, 1863, on its power to tax the lands so annexed, and during the years from 1879 to 1882, both inclusive, assessed and charged the plaintiff's land, being part of the land so assessed, with city-taxes at *said half rate*, and for the years 1883 and 1884, at the *full rate* imposed by the city on similar property within its former limits, notwithstanding the fact that his land then was, and always had been used exclusively for grazing and farming purposes, and had never been laid off into streets and lots, and sold, or offered for sale, and that there was no building erected thereon. Upon a bill filed by such land-owner, to enjoin the collection of the taxes assessed against his land for the years 1883 and 1884, on the ground that it was exempt from such taxation, under the charter of the city as amended by the act of November 5, 1863 : HELD :

I. That as taxes assessed on real estate without any lawful authority create a cloud upon the title thereof, a court of equity will for that cause alone, entertain a bill to remove the cloud by perpetually enjoining the collection of such illegal taxes. (p. 704.)

II. That no part of the act of November 5, 1863, was repealed by the adoption of the Constitution of 1872, nor was the same

in violation thereof, nor of the Constitution of 1863, nor was the said act or any part thereof, repealed by chapter 141 of the Acts of 1872–3.    (p. 706.)

III. That a statute general in its terms, and without negative words, will not be construed to repeal by implication, the particular provisions of a former statute, which are special in their application to a particular case or class of cases unless the repugnancy be so glaring and irreconcilable as to clearly indicate the legislative intent to repeal.  (p. 708.)

IV. That the first section of chapter 47 of the Code of 1868, so far as it conferred powers on a city, town or village not conferred upon it by its charter, is to that extent an amendment of its charter.  (p  711.)

V. That the exemption from city-taxes specified in the act of November 5, 1863, was such as might at any time be repealed by the legislature.  (p. 713.)

VI. That sections 30, 31 and 41, of chapter 47 of the Code and sections 101 and 103 of chapter 54 of the Acts of 1875, conferred additional powers on the city of Parkersburg, and in effect so amended its charter, as to remove the limitations and restrictions to impose city-taxes upon the lands so annexed thereto, and exempted from such taxes by the act of November 5th, 1863 : and, (p. 714.)

VII. That the city of Parkersburg is authorized to levy taxes for city-purposes, upon *all the real and personal property* within its corporate limits, according to the value thereof, and by a uniform rate of taxation.  (p. 714.)

*T. O. Bullock* for appellant.

*B. Powell* for appellee.

WOODS, JUDGE :

The legislature by an act passed on the 5th day of November, 1863, extended the corporate limits of the city of Parkersburg so as to include a large portion of land not theretofore included therein, and by the second section thereof, declared that the land so annexed, and the inhabitants thereof, were thereby made subject to the jurisdiction of the council of said city as fully as the present town and its inhabitants were then subject thereto ; and should be governed by all the provisions of the original charter of said town and the acts amendatory thereof so far as the same were then in force, *except as thereinafter excepted.*

It is further declared by secs. 3, 4 and 5 of said act, that "no part or parcel of the land so annexed, now used exclusively for gardening, farming, grazing, pasturing or other agricultural purposes, shall be assessed with, or be liable for, any taxes levied for the use of said town, unless or until such part or parcel has been, or shall hereafter be laid off into streets and lots, and such lots have been, or shall hereafter be sold, or offered for sale by the owner thereof;" "and that no building on the land so annexed, shall be taxed by the said town, unless the same fronts on some street, alley, road or turnpike, by which such building is accessible from the present limits of said town; but where any building is so situated, the same and not exceeding one acre of land connected therewith and appropriated to the purposes thereof or of its occupants, may be assessed according to its value, and the owner or occupier thereof charged with such taxes, or levies thereon as may be lawfully imposed by said council, but the rate of taxation so charged shall not exceed *one half* of the rate at the same time charged against similar property within the present limits of said town;" and that "whenever the said council shall cause any sidewalk or any part thereof, on any street, road or turnpike, that is now or may hereafter be opened through any part of the land hereby annexed to the said town to be graded and the curbstone thereof to be set, or placed on one or both sides of such street, road or turnpike, all the land on both sides thereof, so far as the said grading and curbing extend to the depth of not exceeding 200 feet, or one tier of lots on either side, may at the next or any subsequent assessment of the property of the said town be assessed according to its value, and thereafter taxed at the same rate as similar property within the limits of the said town is, or may be taxed."

On the 8th of July, 1885, Barna Powell on behalf of himself and all other taxpayers of said city subject to the illegal tax complained of, filed his bill in the circuit court of Wood county against the city of Parkersburg and its sergeant, alleging the passage of said act of the legislature; that he then was, and for ten years had been the owner in fee of a tract of three acres of land within that portion of the corporate limits of said city so annexed thereto, by the act of No-

vember 5, 1863, which was then, and which has since continuously been used by him exclusively for grazing and farming purposes, and which has never been laid off in streets and lots, and sold or offered for sale; that there was erected on said lot a small house worth about $200.00 with which was enclosed and used, a lot fronting on Walnut avenue or Twelfth street, containing about one tenth of an acre, but the same was not accessible from the limits of said town at the time of the passage of said act, nor was this house then in existence; that this house was carried away by the great flood about the 10th February, 1884.

The bill further avers that if 'said house and the lot connected and used with it had been liable for city-taxes, the rate should not exceed one half the usual rate according to the valuation of similar property in the limits of said city, as they existed before the passage of said act of November 5, 1863; that his three-acre lot fronts on Murdoch avenue eighty-three feet and extends along Walnut or Twelfth street about 600 feet; that in October, 1882, after said lot had been assessed for State and county purposes for the year 1882, the city set in front of the eighty-three feet on Murdoch avenue a curbstone, whereby, at the next or any subsequent assessment of its land-property it might have that part of his three acre tract fronting eighty-three feet on said avenue, extending back 200 feet, assessed according to its value, and thereafter taxed at the same rate as similar property within the former limits of the city; that the city contained more than 2,000 and less than 10,000 inhabitants and that the assessment of all taxes for city-purposes was by law required to be upon the valuation made by the assessor appointed to make such valuation for State and county purposes, and that the city had no authority to make any other valuation for the purpose of assessing taxes thereon, for city-purposes since the passage of chapter 54 of the Acts of 1875.

The plaintiff's bill further avers that the last legal assessment of lands in said city for taxation was in the year 1882, when the whole of the tract 'of three acres was valued and assessed for purposes of State and county taxation at $1,150.00; that the curbstone was set in front of said eighty-three feet after this assessment had been made; that the city has never

caused said one tenth of an acre with the house aforesaid out of said three acres, nor said eighty-three feet fronting on Murdoch avenue, extending back 200 feet, to be assessed for taxation for city-purposes, and that until said parcels were first valued for purposes of State and county taxation they were not subject to city-taxation, nor even when so valued for State and county taxation, could they be placed on the lists for city taxation, until the assessment for taxation next after such valuation.

It further alleges, that the city assessed upon the whole of said three acre tract city-taxes for the years 1879 to 1882 inclusive, amounting in the aggregate to $20.80, which were assessed at half the rate at the same time charged against similar property within its former limits, which the plaintiff was compelled to, and did pay; that for the years 1883 and 1884 the city assessed said three acre lot with the sum of $11.50 on each year, which was full rate of taxation at that time charged against similar property within the former limits of the city, but that these last taxes the plaintiff has refused to pay, and has not paid, and that defendant's sergeant has levied upon the plaintiff's writing-desk, and advertised the same for sale, and unless restrained from doing so, will sell the same to satisfy said taxes so unlawfully charged against him.

The bill denies the plaintiff's liability for said unpaid city-taxes, prays that he may be repaid the $20.80 already paid by him, and that the city and its sergeant may be perpetually enjoined from the collection of said taxes of 1883 and 1884, and for general relief.

The bill was taken for confessed and a demurrer thereto sustained, and leave having been given to amend, the amendment was made in court, and the defendant demurred to the bill as amended, which was overruled, and a day was given the defendant in which to answer, but waiving its right to answer further, the cause was finally heard on the 5th of March, 1886.

By the final decree, the city of Parkersburg, its agents and attorneys, and its said sergeant were perpetually enjoined from collecting said $11.50 taxes claimed for the year 1883, and a like sum for taxes claimed to be due said city for

1884 on account of the assessment of the city of Parkersburg upon the three acres of land owned by the plaintiff; and pay the plaintiff his costs, and the plaintiff waiving his right to be repaid said sum of $20.80 paid by him for the years 1879 to 1882 inclusive.

From this decree the city of Parkersburg appealed to this Court.

The grounds of error alleged are first that—"that part of the act of November 5, 1863, exempting from municipal taxation the lands thereby annexed to said city or prescribing a rate of taxation different from the rate charged against other property in said city is in violation of the first section of Article VIII, of the Constitution of 1863; and

Second. The exemption from taxation and from a uniform rate as prescribed by the act of November 5, 1863, is repealed by the ninth section of Article X, of the Constitution of 1872, and by ch. 141, of the Acts 1872–3.

The first question presented for consideration, arises upon the action of the court overruling the defendant's demurrer to the amended bill. This raises the question whether upon the allegations of the bill a court of equity has jurisdiction to grant the relief prayed for.

It is well settled that the mere illegality of a tax complained of, is not sufficient to confer such jurisdiction. The plaintiff is required to bring his complaint under some acknowledged head of equity jurisdiction, as that a multiplicity of suits, or irreparable injury will be thereby prevented; or that the unlawful tax if imposed on real estate, will create a cloud upon the title thereof. In any such case a court of equity will interfere by injunction to prevent the imposition or collection of such illegal tax. *Kuhn* v. *Board of Education, &c.,* 4 W.Va. 499; *Douglass, &c.* v. *Harrisville,* 9 W. Va. 162; *Corrothers, &c.* v. *Board of Education, &c.,* 16 W. Va. 527; *Christie* v. *Malden,* 23 W. Va. 667; Cooley on Taxation, 536.

While the bill filed in this case is not a model of accuracy or perspicuity in pleading, yet if its allegations be true as stated, they sufficiently show, that the assessment upon the plaintiff's land, of the illegal tax of $11.50 for each of the years 1883 and 1884 creates a cloud upon his title, which a court of

equity may effectually remove by perpetually enjoining the imposition and collection of the illegal tax. Until this is done, the same evil would annually recur to the plaintiff and to every other person owning any portion of the lands within the limits of the territory so annexed to the city, which if resisted would necessarily give rise to a multiplicity of suits.

These grounds of equitable jurisdiction sufficiently appear on the face of the plaintiff's bill, and although they are not distinctly relied upon as grounds for the relief sought, a court of equity regarding the substance rather than the form of the allegations will give to them such weight as they would have been entitled to if they had been set forth with greater particularity.

By sec. 36 of ch. 47 of the Code of 1868, as amended and re-enacted by ch. 92 of the Acts of 1882, it is declared that "there shall be a lien on real estate within a city, town or village, for the city, town or village taxes assessed thereon * * * * * from the time they are so assessed or imposed, which shall have priority over all other liens, except the lien for taxes due the State, county and district, and may be enforced by the council in the same manner now provided by law for the enforcement of the lien for county taxes, or in such other manner as the council may prescribe. If any real estate within such city, town or village be returned delinquent for the non-payment of such taxes thereon, a copy of such delinquent list may be certified by the council to the auditor, and the same may be sold for the taxes, interest and commissions thereon, at the same time, and by the same officer, as real estate is sold for non-payment of State taxes."

If the tax complained of in this case be illegal, the plaintiff has brought himself under one of the well recognized heads of equity jurisdiction; as such tax is apparently a lien upon his land for the non-payment of which it is liable to be sold, it creates a cloud upon his title, for the removal of which, he may invoke the aid of a court of equity.

For this reason alone; if no other appeared in the amended bill the demurrer thereto was properly overruled.

But it is contended by the counsel for the appellant that the demurrer ought nevertheless to have been sustained because the act of November 5, 1863, was repealed by the first

section of Article 10, of the Constitution of 1872, and by ch. 141 of the Acts of 1872–3.

The first section of Article VIII. of the Constitution of 1863, and the first section of Article X. of the Constitution of 1872 are identical, and among other things, both declare that "taxation shall be equal and uniform throughout the State, and all property both real and personal shall be taxed in proportion to its value, to be ascertained as directed by law. No species of property from which a tax may be collected shall be taxed higher than any other species of property of equal value."

The ninth section of Article X. of the Constitution of 1872, declares that "the legislature may by law authorize the corporate authorities of cities, towns and villages, for corporate-purposes, to assess and collect taxes ; but such taxes shall be uniform with respect to persons and property within the jurisdiction of the authority imposing them."

This provision is not found in the Constitution of 1863; but as all legislative power, was, by the first section of Article IV. of that instrument vested in the legislature created thereby, and as there was no inhibition contained therein prohibiting it from being so, the legislature had ample authority to confer upon municipal corporations such powers to impose and collect taxes for corporation-purposes, upon all property within their corporation limits, as were not in themselves contrary to the Constitution; and to remove all doubt on this subject, the fourteenth section of Article VII. of that instrument expressly declared that, "nothing contained in this article shall impair or affect the charter of any municipal corporation, or restrict the power of the legislature to create or regulate such corporations."

It follows therefore that under the Constitution of 1863, the legislature had the same power to create and regulate municipal corporations, by revoking, enlarging or restricting the powers granted to them, as it now possesses under the ninth section of Article X. of the Constitution of 1872.

Under the Constitution of 1863 the legislature possessed the authority to restrict or limit the assessment and collection of taxes in that portion of its territory, annexed to the city of Parkersburg under the provisions of the act of No-

vember 5, 1863, and this restriction, unless said act has been repealed, still exists.

Has this act been repealed either by the first section of Article X. of the Constitution of 1872, or by the ninth section thereof and chapter 141 of the Acts of 1872–3, passed in pursuance thereof?

The effect of these provisions of the Constitutions of 1863 and of 1872, was considered by this Court in the case of *Douglass & McKinney* v. *The Town of Harrisville* reported in 9 W. Va. 162, and the correctness of the conclusions then announced has never since been called in question.

Haymond, president, delivering the opinion of the Court said: "The first section of Article VIII. of the Constitution of 1863, and the first section of Article X. of the Constitution of 1872, in so far as they provide that 'taxation shall be equal and uniform throughout the State, and that all property both real and personal shall be taxed in proportion to its value,' do not apply to counties, cities, towns and villages; and that 'the ninth section of the X. Article of the Constitution of 1872, is addressed to the legislature, and is prospective in its operation, and does not operate *proprio vigore*; and does not operate a repeal of the law in force at the time of its adoption."

The same principle was announced by the Court of Appeals of Virginia in the case of *Gilkeson* v. *Frederick Justices*, 13 Gratt. 577, and in *Norfolk City* v. *Ellis*, 26 Gratt. 224; *Laughorn & Scott* v. *Robinson*, 20 Gratt. 661.

The act of November 5, 1863, not being in violation of sec. 1 of Art. VII. of the Constitution of 1863, was valid and binding; and not being repugnant to secs. 1 and 9 of Art. X. of the Constitution of 1872, was not repealed thereby, and remains in full force unless otherwise repealed.

Was it repealed by ch. 141 of the Acts of 1872–3?

As already shown, the ninth section of Art. X. of the Constitution of 1872, was prospective in its operation and awaited the aid of legislation to make it operative.

For the purpose of partially giving effect to this ninth section the legislature on the 12th of December, 1873, enacted ch. 141 of the Acts of 1872–3, which was entitled, "An act authorizing municipal corporations to issue bonds."

Among other things this act prescribed the maximum rates of taxation which cities, towns and villages, having a specified number of inhabitants, might impose upon the property within their respective corporate limits, and then declared that, "Every city, town and village shall be authorized to impose taxation upon the inhabitants thereof to the extent of the value of his property therein. Such taxes shall be uniform with respect to persons and property within their jurisdiction, and shall only be levied on such property real, personal and mixed, and on capital, on which the State imposes a tax, and on licenses."

If we regard only the generality of the declaration in chapter 141, it would seem broad enough to comprehend and include the special act of November 5, 1863, under consideration, and to be inconsistent with and repugnant to the provision, contained therein, which prescribed a limited measure of taxation upon that portion of the territory of the city, which by the provisions of that act had been annexed to it,—when compared with the measure of taxation, upon other real estate within the city limits.

It is apparent that in the enactment of said chapter 141, the legislative mind was only considering the extent of the power proper to be conferred upon municipal corporations, to authroize them to issue bonds, and to provide for the payment thereof, by taxation upon the property within their corporate limits and the restrictions proper to be imposed on them, in regard to the amount of indebtedness they should be permitted to incur, and the maximum rate of taxation proper to be imposed upon the property within the municipal jurisdiction. It is very clear from an examination of chapter 141, that the legislative mind was not considering the general or special powers conferred, or the duties imposed on municipal corporations, in regard to any other subject than authorizing them to issue bonds and provide for the payment thereof.

It is equally clear that the legislative mind was not then considering the propriety of altering, abolishing or continuing in force any special act, theretofore passed, creating, or amending the charter of any particular, existing corporation.

In such a case the well settled rule of construction is,

that a subsequent statute which is general does not abrogate a former statute in particular, and that a statute general in its terms, and without negative words will not be construed to repeal by implication, the particular provisions of a former statute which are special in their application to a particular case or class of cases, unless the repugnancy is so glaring and irreconcilable as to indicate the legislative intent to repeal. *Town of Ottaway* v. *The County of LaSalle*, 12 Ill. 334; Dwarris 674; *Wood* v. *United States*, 16 Peters, 342; *C. & O. R. Co.* v. *Hoard*, 14 W. Va. 370.

We are therefore of opinion that the restriction and limitation of taxation, for city purposes imposed by the act of November 5, 1863 was not repealed by sections "one" or "nine" of the first article of the Constitution of 1872, nor by chapter 141, of the Acts of 1872–3. We will now consider how said act of 1863, has been affected by enactments passed subsequently to the passage of chapter 141 of the Acts of 1872–3. If it has been repealed by any of these subsequent enactments, the demurrer should have been sustained, and the bill dismissed, if not, then the decree of the circuit court was plainly right and must be affirmed.

A brief review of the legislation subsequent to the passage of the act of November 5, 1863, will aid us in reaching correct conclusions in regard to the question whether, or not, the same is still in force.

By the act of November 5, 1863, the charter of the city of Parkersburg was so amended as greatly to extend the boundaries thereof by annexing thereto a large amount of territory not previously within its corporate limits, and also to exempt from city-taxes to a limited extent all the real estate in that portion of the city so annexed thereto.

We have seen that sec. 1, of Article X. of the Constitution of 1872, relates exclusively to State taxes, and has no reference to county, city or village taxes; and that sec. 9 of the same article, was inoperative without the legislation necessary to enforce it, and as a consequence thereof it remained with the legislature to determine what property should be made liable to municipal taxation subject only to the condition, that when prescribed, such taxation thereon should be

uniform, and according to the value thereof to be ascertained in the manner prescribed by law.

By section one of chapter 47 of the Code of 1868, which went into effect on the first of April, 1869, it was declared that "towns (which included cities) and villages heretofore established in this State, remain subject to the law now in force, applicable thereto respectively, except that the council of a town or village heretofore established, may exercise all the powers conferred by this charter, although the same may not be conferred by their charter; and so far as this chapter confers powers on a town or village council, not conferred by the charter of such town or village, the same shall be deemed an amendment of said charter."

It is further declared by section 30 of the same chapter that, "the council shall cause to be annually made up, and entered upon its journal an accurate estimate of all sums that are, or may become lawfully chargeable on said town, or village, and which ought to paid within one year, and it shall order a levy of so much, as may in its opinion be necessary to pay the same;" and by section 31 of the same chapter it is further declared, "that the levy so ordered shall be upon all dogs in said town or village, and upon *all the real and personal estate therein*, subject to State and county taxes, *provided*, that the taxes so levied upon property shall not exceed one dollar on every hundred dollars of the value thereof."

By the twenty eighth section of the same chapter it is further declared that the council of such town is among other powers, invested with authority to provide for the annual assessment of taxable property therein, and section 41, directed that such assessment should be upon "the property within the town subject to taxation in the same manner and form in which assessments are made by the assessor of the county."

Chapter 29 of the Code, providing for the general assessment of the taxable property of the State, contains no provision for the assessment of the taxable property in towns and villages,—that provided by section 28 of chapter 47 being sufficient for that purpose.

The legislature by the enactment of chapter 54 of the Acts of 1875 amended and re-enacted chapter 29 of the

Code, concerning the assessment of taxes, so as to make the same applicable to property assessed for corporation purposes in cities, towns and villages containing not more than ten thousand inhabitants.

By section 101 of chapter 29, so amended and re-enacted it is declared, "that taxes for county, district, city, town and village purposes shall be levied only upon the values of property ascertained for State purposes. *Provided;* that this section shall not apply to taxes for city purposes in cities of more than ten thousand inhabitants."

By section 102 of the same act, it is further declared that this act shall not be construed to repeal an act passed on the 28th of February, 1872, in reference to the Bruen survey. And then by section 103 declares "that *all acts* and *parts* of acts *inconsistent* with this act are hereby repealed."

By the act passed on the 12th of March, 1881, entitled "An Act to revise, amend and re-enact chapter 29 of the Code of West Virginia concerning the assessment of taxes," it was declared by the ninety ninth section thereof, that, "the words 'tax,' 'taxes,' 'taxable,' and 'taxation,' in this act, shall be deemed to include county, district and municipal corporation levies, in all cases not inconsistent with the context," and by the one hundredth section thereof, it is declared that, "taxes for county, district, city, town and village purposes shall be levied only upon the values of property ascertained for State purposes. *Provided;* that this section shall not apply to taxes for city purposes, in cities of more than ten thousand inhabitants," and then declared that, "all acts and parts of acts coming within the purview of this chapter, and inconsistent therewith, are hereby repealed."

It is evident that by the operation of the Act of November 5, 1863, the charter of the city of Parkersburg was so amended, that it possessed no power to assess and collect any city taxes upon the lot of three acres of land in the bill mentioned, owned by the plaintiff so long as the same was used expressly for grazing, gardening, farming, pasturing, or other agricultural purposes, unless, or until the same had been, or should be laid off into streets and lots, and such lots had been sold or offered for sale by the plaintiff; nor can it tax any building erected thereon unless the same fronts

on some street or alley by which the same was accessible from the limits of the city as they existed on the 5th of November, 1863; and that even when such building was so erected thereon as to become liable to city-tax, the building and not exceeding one acre of land used in connection therewith, could-not be assessed with city-taxes at a greater rate than one half the rate at the same time charged against similar property within the then existing limits of the city.

As long as the charter of the city remained unchanged the power to impose any taxes upon the plaintiff's lot of three acres, in one case, was totally suspended, and in the other it was limited and restricted to the assessment thereon of city taxes to one half the city rate upon similar property within its former limits.

By sections 30 and 31 of ch. 47 of the Code of 1868, all sums in any city or town in the State and payable within the year, shall be levied by its council upon all dogs in the city and upon *all the real and personal estate* therein which is subject to State and county taxes. Of this power the city of Parkersburg by its amended charter had been deprived as to the territory annexed to it by the act of November 5, 1863.

By the first section of chapter 47 of the Code, there is granted to *all the cities*, towns and villages in this State, and they may exercise the power of taxation in the manner specified in said sections 30 and 31, although the same may not have been conferred on them by their charters, and if the same has not been conferred upon them by their charters, this power so conferred on all by chapter 47 of the Code, shall be deemed to be, an amendment to said charter.

This power to lay such levy on all the real estate within its corporate limits, was not conferred on the city of Parkersburg by its charter as amended; on the contrary it was, as to a large portion of its territory, including that owned by the plaintiff, withheld from it. But its charter in this respect has been amended by the forty seventh chapter of the Code, and its provisions being repugnant to, and irreconcilable with, the limitations and restrictions imposed by the Act of November 5, 1863, the same is by necessary implication repealed by said forty seventh chapter.

As a consequence of this repeal the city of Parkersburg may lawfully assess all the real estate within its corporate limits with taxes for city-purposes by a uniform rate of taxtion.

In the case of *Probasco &c,* v. *The Town of Moundsville*, decided by this Court in 1877, and reported in 11 W. Va. 501, the same question was considered, although presented in a different form.

The facts and circumstances in that case were almost identical with these now under consideration.

The charter of the town of Elizabethtown had been amended by an act of the General Assembly of Virginia passed on the 29th of May, 1852, whereby among other things the corporate limits of the town were extended, so as to embrace certain lands not theretofore within her corporate limits, with a provision in said Act that "said addition shall not be taxed as *town* property until actually laid off into lots, squares, streets and alleys and sold as such by the proprietors thereof or improved by being enclosed and built upon."

By a similar act passed in February, 1853, the charter of the town of Moundsville was amended, and its corporate boundaries enlarged, with a similar provision in these words : That "the lands lying within the corporate limits not yet laid off into lots, streets and alleys shall not be subject to town taxes so long as they remain in their present state, and when they shall have been so laid off by the proprietors, no lots remaining unsold shall be subject to taxation by the corporation unless improvements of the assessed value of $200.00 are erected thereon."

By an act passed on the 23rd of February, 1866, by the legislature of this State the town of Elizabethtown and Moundsville were consolidated into one corporation by the name of the town of Moundsville, the corporate limits whereof were the same as then fixed and defined by law as the corporate limits of the town of Elizabethtown and Moundsville.

By the sixth section of this act, it was declared that—"the lands lying within the corporate limits not yet laid off into streets and alleys shall not be subject to town taxes so long

as they remain in their present state; but when they shall have been so laid off by the proprietors thereof respectively, no lots remaining unsold in the hands of the proprietors shall be subject to taxation by the corporation until assessed, unless improvements of the assessed value of $100.00 shall have been erected thereon."

In 1876, the town of Moundsville made a general levy upon all the real estate within its corporate limits including the additions made thereto, and to the town of Elizabethtown, before their consolidation under the act of 1866.

Under these circumstances Tobasco and other petitioners obtained a *supersedeas* to said levy, alleging in their petition therefor, that they were taxpayers residing in Moundsville and owners of real estate within said additions, and exempted from taxation by virtue of the several provisions contained in said acts of the legislature, and that the lands owned by them were then and always had been used for agricultural purposes, and that the same is not now and never had been laid off into lots, streets and alleys, or in any manner connected with city property; and that their lots had not been improved by buildings erected thereon of the assessed value of either $100.00 or $200.00, and they claimed that these said lands were not subject to taxation for municipal purposes until it was laid off into lots, streets and alleys, and the lots were either sold or built upon. The *supersedeas* to said levy was allowed, and afterwards quashed, from which judgment of the circuit court quashing the same it was brought to this Court by writ of error, and this Court held, that exemptions founded on tax laws are not usually contracts with anybody; that the exemptions in said amended charter of Moundsville were such as might be repealed by the legislature; that the first section of chapter 47 of the Code, so far as it conferred powers on a town, or village not conferred by its charter, was to that extent an amendment thereof; that such powers so conferred by such amendment may be exercised by the council of Moundsville; that secs. 30 and 31 and 41 of ch. 47 of the Code, and secs. 101 and 103 of ch. 54 of the Acts of 1875, conferred additional powers, and that the town of Moundsville was authorized to levy taxes upon all real and personal property within said town, subject to State and county taxes.

The correctness of this ruling has never been called in question and there is nothing in this record, nor in the legislation of this case since it was decided to justify us in now departing from it; on the contrary all subsequent legislation, appears to have been enacted to carry out the spirit and purpose of the forty seventh chapter of the Code, and of the act of 1875, so that in cities and towns containing not exceeding ten thousand inhabitants and *all property real and personal* within their corporate limits, shall, as nearly as possible, be assessed with taxes for corporate purposes, according to its value, and by a uniform rate of taxation.

We are therefore of opinion, that in so far, as the city of Parkersburg, by the amendment to its charter by the passage of the act of the 5th of November, 1863, was limited and restrained from assessing taxes for city purposes, upon the plaintiff's lot of three acres, at the same rate, at the same time charged against similar property within the limits of said city as it existed before the passage of said act, was so amended by the provisions of the forty seventh chapter of the Code, as to remove such restriction and limitation; and to authorize said city to assess and tax for city purposes, all the real estate within its corporate limits, according to its value, and by one uniform rate of taxation; and that so much of the Act of November 5, 1863, as imposed such limitation and restriction, upon the city, in regard to the real estate so annexed thereto, was repealed by the provisions of the forty seventh chapter of the Code, and of the fifty fourth chapter of the Acts of 1875.

We are therefore of opinion that the decree of the circuit court rendered herein on the 3d of December, 1885, is erroneous, and must be reversed with costs to the appellant.

And this Court now proceeding to enter such decree as the circuit court should have rendered, it is adjudged, ordered and decreed, that the demurrer be sustained, the injunction wholly dissolved, and the plaintiff's bill be dismissed, and that he pay to the defendant its costs in the circuit court expended.

REVERSED.   DISMISSED.